### CHAMBERLAIN v. PIERSON.

(Circuit Court of Appeals, Fourth Circuit. May 17, 1898.)

No. 226.

1. ACTION FOR INJURIES RECEIVED IN WRECK—RECORD OF CONVICTION OF WRECKERS—ADMISSIBILITY OF EVIDENCE.
   In an action against a railroad company to recover for injuries received in a wreck caused by the derailment of a train through the alleged negligence of the company, the record of the trial and conviction of persons charged with murder by feloniously derailing the train is not admissible in evidence on behalf of the defendant.

2. CONTRACT FOR TRANSPORTATION OF EMPLOYES—EFFECT ON RIGHTS OF EMPLOYES.
   Employés of an express company, who had no knowledge of a contract between such company and a railroad company to the effect that such employés were to be furnished free transportation over the railroad at their own risk while in the service of the express company, are not bound thereby.

3. LICENSEE ON RAILROAD TRAINS—RIGHT TO RECOVER FOR NEGLIGENCE.
   One who accepts free transportation on a railroad at his own risk can nevertheless recover for injuries caused by negligence of the railroad company or its employés, not his fellow servants.

In Error to the Circuit Court of the United States for the District of South Carolina.

J. E. Burke, for plaintiff in error.

W. Perry Murphy, for defendant in error.

Before GOFF, Circuit Judge, and JACKSON and PAUL, District Judges.

PAUL, District Judge. This was an action brought by the defendant in error against the plaintiff in error for damages resulting to the defendant in error while traveling as an express messenger on the railroad of which the plaintiff in error was receiver. The complaint filed in the court below alleges:

"That on the 28th day of November, 1891, the said plaintiff was in the employ of the Southern Express Company as messenger, and in such capacity was on board of the train of the South Carolina Railway Company, operated by the defendant as aforesaid, which left the city of Columbia about the hour of 7:50 o'clock on the said 28th of November, 1891, and was on said train when, through the carelessness, negligence, wrongful act, and default of said Chamberlain as receiver as aforesaid, he sustained serious injuries," etc. "That the said carelessness, negligence, wrongful act, and default of the said defendant lay in the fact that he so carelessly, negligently, and wrongfully conducted himself in the management of said railroad that, through the negligence, carelessness, and unskillfulness of himself and his servants, certain bolts were left out in the rails on the roadbed of the said company near the nineteen-mile post, near Lincolnville, S. C., by reason of which the train upon which plaintiff was riding did on said 28th day of November, 1891, without any fault on the part of the plaintiff, become derailed and wrecked at or near the said nineteen-mile post, in the county of Berkeley, in the state of South Carolina, inflicting the injuries upon the plaintiff above mentioned, from which injuries the said plaintiff has both suffered great bodily pain and been deprived of the means of future support, to his great loss and damage, to wit: * * *."

The amended answer of the defendant to the complaint is as follows:

"First. For a first defense, that he denies each and every allegation in said complaint contained. Second. And for a second defense this defendant says that the derailment referred to in the third paragraph of the complaint did not occur through the negligence of this defendant or his servants, but through the unforeseen and unexpected act of certain malicious and ill-disposed persons, whose names this defendant is informed and believes are Peter Bruno, alias Dick Bruno, and Grant Bennett, in removing bolts and fastenings of the rails at the place where said derailment occurred, without the knowledge of this defendant or any of his servants, and notwithstanding due care and diligence on the part of this defendant in the operation and maintenance and inspection of said railway. Third. And for a third defense this defendant says that said plaintiff was permitted to enter upon and into the car of this defendant only as the agent and servant of this defendant, and was given free transportation upon the car of this defendant only on condition that, in so transporting the said plaintiff, said plaintiff should be at his own risk of loss or damage through personal injury received during such transportation."

The record shows that on the trial of the case the defendant, to sustain the second ground of defense stated in his answer—

"Offered in evidence an exemplification of the record of the court of general sessions, Berkeley county, state of South Carolina, duly authenticated, in the case of State of South Carolina v. Peter Bruno and Grant Bennett, showing the indictment, final conviction, and sentence of said Peter Bruno and Grant Bennett on the charge of murder of said Mason Parker on 28th November, 1891, near Lapson's, in Berkeley county, S. C., by feloniously breaking, injuring, removing, and destroying certain joints, plates, and bolts from the railway track of the South Carolina Railway Company, by reason of which a certain railway train was derailed and thrown from said track, and whereby the said Mason Parker was crushed, and received a mortal wound, of which mortal wound the said Mason Parker died; and thereupon plaintiff objected

to the introduction of the same on the ground that the evidence was irrelevant, and as being res inter alios acta, when his honor, the presiding judge, sustained the objection, and excluded the testimony. To all of which the defendant then and there, and before the jury had withdrawn from the bar, did except, and the court noted the exception."

An exception to this ruling of the trial judge is the basis of the first assignment of error.

An agreement between the defendant railway company, of the first part, and the Southern Express Company, of the second part, was also introduced by the defendant. So much of that agreement as appears to be relevant to the issues is stated in the record as follows:

"That whereas, the party of the first part desires that all express business conducted on and over its lines, as they now or hereafter may exist, shall be ·under the sole control and direction of the party of the second part, for the mutual benefit and account of the parties hereto, the revenue from which shall be apportioned as hereinafter defined and agreed; and whereas, the aim and object of this agreement is to promote mutual interests, and secure for the parties hereto the best obtainable results therefrom, each will co-operate fully with the other for the attainment of that end: Now, therefore, it is hereby agreed as follows: * * * Eighth. The said party of the first part hereby recognizes as its employés all officers, agents, and servants of the party of the second part, while engaged in the business contemplated by the agreement, and will accord free transportation for them at their own risk. Ninth. Employés of the party of the second part shall be subject to the rules of the party of the first part, made for the government of its employés while on the trains; but said rules shall not conflict with the proper duties of said employés, or unnecessarily interfere with them in the discharge of their duties. * * * Fourteenth. No responsibility shall attach to the party of the first part for any goods, money, or other articles that may be transported on or over its lines, for or in the custody of the party of the second part, except for losses of or damage to freights which may result from the neglect of the party of the first part, its agents or servants; provided, that no such responsibility shall attach to the party of the first part for freight or other matter on which the party of the first part receives no compensation."

At the conclusion of the evidence the court instructed the jury as follows:

"It is not necessary to decide whether the plaintiff, as messenger of the express company, had all the rights of a passenger on this train, or whether he was bound by the terms of the contract between the two companies, although he did not know of the contract, or whether he stood in the place of an employé of the railroad company. I charge you that if he was injured in this train by reason, perchance, of the negligence of the boss track minder and his gang, the railroad company is responsible to him, whether he was a passenger, or ·bound by the contract between the two companies, or was an employé of the railroad company. The boss track minder and his gang were not fellow servants of the plaintiff, if we treat him as an employé of the railroad company; and their negligence was not one of the risks he assumed, if he assumed any risks."

To this instruction the defendant excepted, and this is made the second and third grounds of assignments of error.

The fourth assignment of error is that the court erred in— ·

"Instructing the jury that in this case there was no burden of proof on either side, but the jury should come to their conclusion from all the facts and circumstances of the case. That the court erred in said instruction, inasmuch as, notwithstanding the granting of the first request to charge, this instruction impaired the force and meaning thereof, and was calculated to mislead the jury."

The instruction on which this assignment of error is based is shown by the record as follows:

"His honor, the presiding judge, further instructed the jury that in this case there was no burden of proof on either side, but that the jury should come to their conclusion from all the facts and circumstances in the case. To which instructions the defendant there and then, before the jury had withdrawn from the bar, excepted, and the court noted the exception."

In settling this bill of exceptions, the judge states that he has no doubt some such expression was used; that what he meant was that, both parties having offered proof as to the disputed facts, the question was as to the preponderance of evidence,—the burden having been accepted, and the evidence being intended to remove it. As he had not refused the first request to charge by defendant, he did not feel that he was misleading the jury. This first request was as follows:

"(1) That the foundation of the action is negligence, and the plaintiff, Pierson, cannot recover from the defendant unless plaintiff proves, by the preponderance of the evidence, that the defendant has been guilty of negligence; that is to say, that, under the circumstances proved in this case, he has omitted to do what a prudently conducted railroad company would have done, or that he has done what a prudently conducted railroad company would not have done."

The record does not show that the instruction here complained of was given in the usual form, which is in writing, and in which it is apparent the other instructions were given. The record shows that the verdict of the jury was rendered more than 12 months before the bill of exceptions was settled, and the indefinite and uncertain character of this instruction is shown by the language of the presiding judge, that he has "no doubt some such expression was used," and states what he meant by it. If we apply with strictness rule 11 of this court, such an indefinite statement of the instruction should be rejected. The rule provides:

"When the error alleged is to the charge of the court, the assignment of error shall set out the part referred to totidem verbis, whether it be in instructions given or instructions refused. Such assignment of errors shall form part of the transcript of the record and be printed with it. When this is not done, counsel will not be heard, except at the request of the court, and errors not assigned according to this rule will be disregarded, but the court, at its option, may notice a plain error not assigned." 21 C. C. A. cxii., 78 Fed. cxii.

But there is no real necessity for discussing this assignment of error, in view of the first instruction asked by the defendant and given by the court. If true, as the trial judge says, "no doubt some such expression was used," which counsel for the defendant insists was an instruction to the jury, and calculated to mislead it, the law is so clearly and correctly stated in the first instruction asked by the defendant and given by the court, and so completely covers the principle involved, that the jury could not have been misled as to the law. If there was error in the verbal, and, as appears to us, uncertain, expression of the court, to which exception is taken, it was corrected by the written instruction. This written instruction negatives the contention that the court erred in making a statement calculated to mislead the jury.

The fifth, sixth, and seventh assignments of error are based on the following instructions requested by the defendant, which the court refused to give as asked for, but gave as qualified by the court:

"The defendant further requested his honor, the presiding judge, to charge the jury as follows: 'That if the jury find from the evidence that the plaintiff was an express messenger on defendant's train, under a contract which was made between the express company, of which the said plaintiff was an agent, and the defendant, which provided that the plaintiff should be considered as an employé, officer, agent, or servant of the defendant, Chamberlain, and should be accorded free transportation at his own risk, then plaintiff cannot recover from defendant, and the jury must find for the defendant,' —which request his honor declined to give, except with this qualification, 'Unless the injury was caused by the negligence of an agent of defendant who was not a fellow servant of plaintiff,' to which refusal the defendant then and there, and before the jury had withdrawn from the bar, did except, and the court noted the exception. The defendant further requested his honor, the presiding judge, to charge the jury as follows: 'That, as between employer and employé, negligence on the part of the employer is not to be inferred from the existence or occurrence of the accident which caused the injury complained of,'—which request his honor declined to give, to which refusal the defendant then and there, and before the jury had withdrawn from the bar, did except, and the court noted the exception. The defendant further requested his honor, the presiding judge, to charge the jury as follows: 'That an employer does not become an insurer of the life or safety of his employés, but the duty of the employer to the employé is to furnish and keep the machinery and appliances about which the employé is required to perform his work in a reasonably safe condition,'—which request his honor declined to give, to which refusal defendant excepted."

The action of the court in refusing to admit in evidence on behalf of the defendant the record of the conviction of Bruno and Bennett in the court of general sessions of Berkeley county, S. C., for the murder of Parker by removing and destroying the plates and bolts of the railroad company, was clearly correct. It was properly rejected as being res inter alios acta. This principle is so familiar and fixed in the law of evidence as to scarcely demand discussion. A few citations of authorities will be sufficient to show the correctness of the ruling of the court below. The plaintiff in the circuit court was not a party to, or interested in, the prosecution and conviction of Bruno and Bennett, and could not be bound or in any wise affected by the evidence or judgment in that case. The general doctrine on this subject is thus stated in 2 Black, Judgm. § 529:

"Since the parties to a criminal prosecution and those in a civil suit are necessarily different, and as the objects and results of the two proceedings, and the rules of evidence which apply to them, respectively, are equally diverse, it follows that the judgment in the former cannot be used by way of estoppel in the latter, save for the single purpose of proving its own existence, if that becomes a relevant fact."

In Wood v. Davis, 7 Cranch, 271, the supreme court held that the record of a judgment that a woman was born free was not conclusive evidence of the freedom of her children, in a suit by them against one not a party or privy to the defense in the mother's action. In an action of trespass by a marine in an exploring expedition, against the commander, for causing him to be whipped, the proceedings of a court-martial, acquitting the commander of the charge, were held not admissible in evidence. Wilkes v. Dinsman, 7 How. 89.

The second, third, fifth, sixth, and seventh assignments of error

will be considered together. They are all made on the theory that Pierson, the plaintiff in the court below, was bound by the contract between the railroad company and the express company; that he was on the railroad train by virtue of that contract; that by said contract he was regarded as an employé of the defendant, the railroad company; and that by said contract he was accorded free transportation at his own risk. The position taken by counsel for the railroad company, and insisted upon in the instructions asked on behalf of the company, was that the plaintiff was not entitled to recover, even though the evidence showed that the injury which he suffered was caused by the negligence of an agent of the defendant who was not a fellow servant of the plaintiff. The learned judge of the trial court held (what we regard as a correct announcement of the law) that, if the plaintiff was injured by reason of the negligence of the boss track minder and his gang, the railroad company was responsible to him, whether he was regarded as a passenger, or was bound by the contract between the two companies, or was an employé of the railroad company; that the boss track minder and his gang were not fellow servants of the plaintiff, if he was to be treated as an employé of the railroad company; and that their negligence was not one of the risks he assumed, if he assumed any risks. The discussion of this feature of the case presents the question: Was the plaintiff below, as a messenger of the express company, bound by the contract between the railroad company and the express company to assume all risks to life and limb to which he was exposed in performing his duties on the train, as an express messenger? He was not a party to the contract, never ratified it, and in his testimony, when asked if he knew of this provision of the contract, "'that the said parties of the first part hereby recognize as its employés all officers, agents, and servants of the second part,' etc., and you were accorded free transportation at your own risk?" answered, "If I had known that, I wouldn't have gone." The authorities cited by defendant's counsel to sustain the contention that the plaintiff was bound by the contract between the railroad and the express company are based on the theory that the party affected by the contract had knowledge of its provisions, and acquiesced in its terms. Wiggins Ferry Co. v. Ohio & M. Ry. Co., 142 U. S. 396, 12 Sup. Ct. 188; 2 Pom. Eq. Jur. § 965. The view of the trial judge was that notwithstanding the plaintiff, under the contract between the railroad company and the express company, should be considered an employé of the railroad company, and accorded free transportation at his own risk, yet the railroad company was liable if the injury to the plaintiff was caused by the negligence of an agent of the defendant who was not a fellow servant of the plaintiff. That the plaintiff, an express messenger, was not a fellow servant of the track minder and those under him, is not questioned. If it be conceded, as claimed by the railroad company, that the contract between it and the express company accorded the plaintiff free transportation at his own risk, yet it is well established that such a contract will not relieve the railroad from responsibility for an injury resulting from the negligence of its agents. One of the earliest decisions of

the supreme court on this question is Railroad Co. v. Derby, 14 How. 468. In this case the plaintiff below was president of another company, and a stockholder in the road on which he was riding. He was on the road by invitation of the president of the company,—not in the usual passenger cars, but on a small locomotive car used for the convenience of the officers of the company,—and paid no fare for his transportation. The railroad company defended on the ground that no cause of action can arise to any person by reason of the occurrence of an unintentional injury while he is receiving acts of kindness which spring from mere social relations, and as there was no contract between the parties, express or implied, the law would raise no duty as between them, for the neglect of which an action can be sustained. The supreme court said:

"The liability of the defendants below for the negligent and injurious act of their servant is not necessarily founded on any contract or privity between parties, nor affected by any social relation, or otherwise, which they bore to each other."

Railroad Co. v. Lockwood, 17 Wall. 357, is a leading case on this subject. The court there held:

"(1) That a common carrier cannot lawfully stipulate for exemption from responsibility, when such exemption is not just in the eye of the law. (2) That it is not just and reasonable, in the eye of the law, for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants. (3) That these rules apply both to carriers of goods and carriers of passengers for hire, and with a special force to the latter. (4) That a drover traveling on a pass, such as was given in this case, for the purpose of taking care of his stock on the train, is a passenger for hire."

In Waterbury v. Railroad Co., 17 Fed. 671, the doctrine is thus stated (syllabus):

"The right which a passenger by railway has to be carried safely does not depend on his having made a contract, but the fact of his being there creates a duty on the part of the company to carry him safely. It suffices to enable him to maintain an action for negligence if he was being carried by the railroad company voluntarily, although gratuitously, and as a matter of favor to him."

The principles recognized in the cases we have cited, and in numerous other decisions, were correctly applied by the judge who presided in the court below. The plaintiff Pierson, as an express messenger, was rightfully on the train of the defendant, in the performance of duties which the railroad company had, by its contract with the express company, agreed that he should perform, and which, the contract states, were "for the mutual benefit and account of the parties thereto." Whatever his relation to the railroad company,—whether that of a passenger or employé,—he had a right to maintain an action for any injuries he suffered by reason of the negligence of the defendant company, its agents and servants.

The sixth and seventh assignments of error are based on the refusal of the court to give the following instructions asked by the defendant:

In declining to instruct the jury as follows: "That, as between employer and employés, negligence on the part of the employer is not to be inferred from the existence or occurrence of the accident which caused the injury complained of." In declining to instruct the jury as follows: "That an

employer does not become an insurer of the life or safety of his employés, but the duty of the employer to the employé is to furnish and keep the machinery and appliances about which the employé is required to perform his work in a reasonably safe condition."

These requests are mere abstract propositions of law correctly stated, but we fail to see the relevancy when applied to the evidence in this case. The court below correctly stated the law to the jury. The law, as stated, properly applied to the evidence. We find no error in the rulings of the court below, and the judgment of that court is affirmed.