# BALTIMORE & OHIO RAILROAD COMPANY v. DUKE.*

NEGLIGENCE; RAILROADS; MASTER AND SERVANT.

1. An express company employee cannot recover of a railroad company
   for injuries sustained by the negligence of that company while he
   was being transported in one of its cars, where a contract between
   the railroad company and the express company exempts the railroad
   company from such liability to any of the express company's em-
   ployees, and under the employee's contract with his employer, volun-
   tarily entered into as a condition of employment, he assumed all such
   risks, and stipulated that he would indemnify and hold his employer
   harmless from all liability for such an accident or injury; and this
   is true, although the employee was a minor when he entered into
   the contract of employment, if he ratified the contract by remaining
   in the employment of the express company sixteen months after
   attaining his majority and down to the time of his injury.

2. Where one is employed as a helper by an express company, at $18 per
   month, and his contract of employment provides that if required he
   is to perform services in addition to those of a helper, such a provi-
   sion means that·he must perform services of a similar nature and
   value.

3. Although a contract between an express company and one of its em-
   ployees, exempting any railroad company transporting him from the
   consequences of its negligence, may not be void as against public
   policy, it should receive a strict construction, and a waiver by the
   employee of his rights should not be extended by implication or
   surmise.

4. Where an express company employee, while holding the office of driver
   at $85 per month, but at the time acting as train guard for an
   extra compensation, was injured by the negligence of a railroad
   company transporting him, it is no defense, in an action by him
   against the railroad company, that by his original contract of em-
   ployment with the express company as a helper at $15 per month,
   he agreed to indemnify that company from liability for such injury

---

*Negligence—Railroads.—For cases upon the question of contract exempt-
ing railroad company from liability for negligent injury to sleeping-car
employees, or others sustaining a similar relation to the company, see
note to *Denver & R. G. R. Co.* v. *Whan,* 11 L.R.A. (N.S.) 432; As to rights
of express agents riding on pass or contract for free passage, note to
*Muldoon* v. *Seattle City R. Co.* 22 L.R.A. 796.

or negligence, and by a contract between the two companies the express company indemnified the railroad company against loss for any such injury to any employee of the express company; as, when such employee was advanced to the new position of driver the old contract was terminated.    (Mr. Justice Van Orsdel dissenting.)

5. A pass issued by a railroad company to an employee of an express company, for a consideration moving from the express company to the railroad company, is not a gratuity; and, if the employee is injured while riding on it, the railroad company is not exempted from liability to him by a provision in the pass to the effect that the person using it assumes all risks of accident and injury.    (Following *Blatcher* v. *Philadelphia, B. & W. R. Co.* 31 App. D. C. 385, 16 L.R.A. (N.S.) 991.)

No. 2297.   Submitted November 7, 1911.   Decided February 5, 1912.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover damages for personal injuries.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal [by the Baltimore & Ohio Railroad Company] from a judgment of the supreme court of the District of Columbia, after verdict, in an action by the appellee, Joseph C. Duke, for personal injuries alleged to have been sustained by him while a passenger on one of appellant's trains.

On December 1, 1903, Mr. Duke, who was then a minor, signed an "application for employment" addressed to the United States Express Company.   The application contained the following:   "I understand that I may be required to render services for the company on or about the railroad, stage, and steamboat lines used by the company for forwarding property, and that such employment is hazardous.   I assume the risk of all accidents and injuries which I may sustain in the course of my employment, whether occasioned by negligence, and whether resulting in my death or otherwise.   I agree to hold the company harmless from any and all claims that may be made against

it, arising out of any claim or recovery on the part of myself or my representatives, for damages sustained by reason of my injury or death, whether such injury or death result from negligence or otherwise. I agree to pay to the company, on demand, any sum which it may be compelled to pay in consequence of any such claim. * * * I ratify all agreements made by the company with any transportation line in which the company has agreed, or may agree in substance, that its employees shall have no cause of action for injuries sustained in the course of their employment upon the line of such contracting party; and I agree to be bound by each and every of such agreements, so far as the provisions thereof relative to injuries sustained by employees of the company are concerned, as fully as if I were a party thereto."

On the same date a "contract of employment" was entered into. This was attached to the application and read as follows:

On the statement and conditions contained in the foregoing application, the United States Express Company hires the applicant above named as helper and to perform such other services as may be directed from time to time, from December 1st, 1903, and agrees to pay him for his services at the rate of $18 per month, or fractional part thereof, to the date of his resignation or discharge.

Dated at Washington, D. C., Dec. 1st, 1903.

(Signed)   United States Express Company,

By W. C. Johnson.

Joseph C. Duke, Employee.

Duke signed no other contract during his term of employment.

On the day he signed the above contract, Duke entered upon his duties as helper, and continued in that capacity for nine or ten months, when he became a driver for a month and was then put back as helper for two or three months, when he was again regularly employed as driver, in which position he was serving at the time of his injury, and receiving at that time

$65 per month. It appeared in evidence that on Saturday night of December 1, 1907, after regular hours, Duke was deputized to go to Parkersburg, West Virginia, as guard of express matter upon a car of appellant's railroad. For this service he received extra compensation. He was also provided with a pass for "one special messenger * * * employee United States Express Company," issued by the appellant railroad company. This pass bore on its back the following provision: "The person accepting and using this pass thereby assumes all risk of accident and injury to person, and all damage to, or loss of, property." The accident occurred while Duke was returning to Washington.

It further appeared that, under the contract between the railroad company and the express company, the former was to carry, free of charge, the messengers of the latter when traveling on the business of the express company, and that the express company was to "indemnify the railroad company against any damages sustained in consequence of the death of, or personal injury to, any of the officers, agents, or employees of the express company."

The general agent of the express company, here located, testified for the railroad company that helpers were frequently required "to do extra work or other work;" that they were quite frequently sent out on trains as guards, receiving extra compensation, however, for their services; that there were helpers of different kinds but all classified as helpers; that drivers were in a single class. This witness corroborated Duke's testimony to the effect that it was not obligatory on drivers to go as guards; that they were sent only when they desired to go.

Counsel for the railroad company offered in evidence said "application for employment" and the contract attached thereto, but the court declined to receive them. To this ruling an exception was noted. The court was then requested, on behalf of the railroad company, to instruct the jury to return a verdict in its favor. This the court declined to do, and an exception was noted.

*Mr. John W. Yerkes* and *Mr. A. A. Birney* for the appellant.

*Mr. Wilton J. Lambert* and *Mr. Rudolph H. Yeatman* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

It is clear that if the contract originally entered into between Duke and the express company was in force at the time Duke was injured, that contract constituted a complete defense to his action, and hence should have been received in evidence. *Baltimore & O. R. Co.* v. *Voigt,* 176 U. S. 498, 44 L. ed. 560, 20 Sup. Ct. Rep. 385. At the time Duke signed that contract he was a minor, but at the time of his injury sixteen months had elapsed since he had attained his majority. The contract, under the authority of *Voigt's Case,* was not invalid as against public policy, and hence, if it was a subsisting contract when Duke became of age, his continuance in the service of the express company for so long a period thereafter clearly constituted a ratification thereof. *Forsyth* v. *Hastings,* 27 Vt. 646; *State* v. *Dimick,* 12 N. H. 194, 37 Am. Dec. 197; *Monumental Bldg. Asso.* v. *Herman,* 33 Md. 128; 1 Taylor, Infancy, p. 85.

Was said contract of December 1, 1903, a subsisting contract at the time Duke was injured? The application inducing that contract and forming a part thereof was one merely for employment. But upon a consideration of that application, the express company entered into a contract with Duke by which he was to serve it as helper, and to perform such other services as might be directed from time to time. For said services, that is to say, for his work as helper, and for such other work as might properly be assigned to him, he was to receive $18 per month,—no more or no less. That was the measure of the value of his services under the contract. We think, therefore, that the provision in the contract that he was, if required, to perform services in addition to those of a helper, must be held to mean services of similar character or value.

At the time of his injury, Duke had been promoted to the

position of driver, and was receiving the compensation attached to that position. Assuming that, while serving under his original contract, the services he was performing at the time of his injury would have been in the line of his duty, that is, a service contemplated by and included in the terms of that contract, he contends—and in that contention he is sustained by the record—that it was no part of his duty as a driver to act as train guard. The change in his position effected a change in his relations with the express company. His duties and responsibilities were materially different, and his compensation correspondingly greater. Under the evidence he then became a member of a distinct and separate class of employees. It was no longer his duty to act as a train guard. How, then, can it be contended that this old contract continued in force? Had the general agent who testified entered the employ of the express company as a helper, and had thereafter been promoted to the position of driver, and then to the position of general agent, could it have been successfully contended that a contract similar in form to the one signed by Duke would have remained in force although not alluded to in any way after its execution? And yet the difference between such a case and the present is one merely of degree. Had not the duties and responsibilities of a driver been materially different from those contemplated by the written contract, undoubtedly the presumption would have been that the conditions of that contract continued in force. But the existence of such a material difference between the new duties and the old destroyed that presumption. *Ranck* v. *Albright*, 36 Pa. 367; *Ingalls* v. *Allen*, 132 Ill. 171, 23 N. E. 1026.

While the contract which Duke signed has been held not to be one against public policy, it nevertheless absolves the railroad company from the consequences of its own negligence, and hence should receive a strict construction. Moreover, by its terms Duke waived important rights, and his waiver should not be extended by implication or surmise. 2 Shearm. & Redf. Neg. p. 917; *St. Louis & S. E. R. Co.* v. *Smuck*, 49 Ind. 302; *Kenney* v. *New York C. & H. R. R. Co.* 125 N. Y. 422, 26 N. E.

626. The language employed does not require the conclusion that, when the new service was undertaken, a service as we have said differing essentially from the original service, the conditions attached to the old service continued. Had such been the intent of the express company, the contract should have so provided, and in the absence of such a provision, Duke should have been required expressly to assent to a continuance of the conditions of the superseded contract.

In view of the foregoing, we rule that when Duke was advanced to the new position of driver the old contract was thereby terminated. Having been terminated, Duke was no longer bound by its waiver provisions, and the court properly refused to receive it in evidence.

One point remains. Appellant contends that inasmuch as Duke, at the time of his injury, was riding on the pass furnished him, he was bound by its provisions and hence assumed all risk of accident and injury. We cannot accept this contention. This pass was not issued as a gratuity, but upon consideration moving from the express company to the carrier. The case is not ruled, therefore, by *Northern P. R. Co.* v. *Adams,* 192 U. S. 440, 48 L. ed. 513, 24 Sup. Ct. Rep. 408, and *Boering* v. *Chesapeake Beach R. Co.* 193 U. S. 442, 48 L. ed. 742, 24 Sup. Ct. Rep. 515, but rather by *Blatcher* v. *Philadelphia, B. & W. R. Co.* 31 App. D. C. 385, 16 L.R.A.(N.S.)) 991; *New York C. R. Co.* v. *Lockwood,* 17 Wall. 357, 21 L. ed. 627; *Chamberlain* v. *Pierson,* 31 C. C. A. 157, 59 U. S. App. 55, 87 Fed. 420; *Kenney* v. *New York C. & H. R. R. Co.* 125 N. Y. 422, 26 N. E. 626. Here, as in the case last cited, the contract between the express company and the common carrier does not in unmistakable language provide an exemption from liability for the negligence of the carrier's employees. Here, as there, the contract between the carrier and the express company may be read not as releasing or preventing an action by employees of the express company against the carrier for injuries sustained by reason of the negligence of the carrier, but rather as an agreement to indemnify the carrier in the event of such an action. Moreover, there is nothing in the record warranting

an assumption that Duke knew of the terms of the contract between the express company and appellant. Of course, as we have said, under the terms of Duke's original contract, by which he agreed, in consideration of his employment, to assume all risks incident thereto, and to ratify all agreements between his employer and common carriers exempting such common carriers from liability for injuries sustained by him, he could not have recovered; but, as we have said, that contract was no longer in force at the time of his injury.

To recapitulate: There was no provision in the written contract between Duke and the express company, that the conditions of that contract should continue in force beyond the completion of the service contemplated therein. In the absence of evidence, we cannot assume that the new service, essentially differing, as we have said, from the old, was undertaken upon the same conditions as the old. At the time of his injury, therefore, Duke had not waived his right of action for injuries sustained by reason of the negligence of the appellant. As the conditions of exemption contained in the pass upon which he was riding were void for the reasons above stated, he was properly permitted to recover.

Judgment affirmed, with costs.          *Affirmed.*

Mr. Justice VAN ORSDEL dissenting:

I am compelled to dissent from the opinion and judgment of the court. The defense interposed by the defendant company rests upon its contract with the express company and the plaintiff's ratification of that contract, coupled with his waiver of the right of recovery from the railroad company. The ratification and waiver executed by plaintiff in the application for employment is most comprehensive. He not only agrees to assume the risk of all accidents and injuries he may sustain while in the course of his employment, and to hold the railroad company harmless from all claims for damages; but he ratifies all agreements made between the defendant and the express company affecting his employment, and agrees to be bound by such agree-

ments as fully as if he were a party thereto. This established the contractual relation between plaintiff and defendant.

I am not here concerned with the contract of employment between plaintiff and the express company, since, as a condition of employment in any capacity, he had exonerated the defendant from liability. After the execution of the ratification and waiver by plaintiff, all that was necessary to make the contract binding between him and defendant was that he should become an employee of the express company. It is immaterial, as between plaintiff and defendant, what the terms of that employment were, so long as he was in the employ of the express company, and continued to assert his contractual rights, or those of the express company, against defendant, and defendant continued to carry out its contract with the express company. It is the waiver which establishes the contractual relation between plaintiff and defendant, and upon which defendant properly rests its defense. This I believe to be the construction placed upon the waiver in the case of *Baltimore & O. S. W. R. Co.* v. *Voigt,* 176 U. S. 498, 44 L. ed. 560, 20 Sup. Ct. Rep. 385.

As evidence that neither the particular capacity in which plaintiff was employed, nor the salary paid, is controlling upon the ratification and general waiver made as a condition of employment, he entered the service of the express company as a helper, served in that capacity for nine months, then as driver for one month, then as helper for two or three months, and again as driver, which position he held at the time of the accident. In the meantime his salary had been increased from $18 per month to $65 per month, showing conclusively, as supported by the undisputed evidence, that he belonged to a general class of employees whose salary begins at a low figure and is from time to time increased, whether the employee continues to work in the same capacity or not.

The general agent of the express company testified that, in employing helpers, it frequently occurred that a man would apply for a position when there would not be a vacancy with a salary attached that would admit of the employment of a married man, or a man of age. Consequently, "he would go on as

a helper, with the understanding that he would be used for other duties. He might work one day as a helper, and the next day on the platform, and another day as driver, or be sent as a guard. He would be used in various positions and given the benefit of extra work which would bring up his salary to a living salary. A helper was to do anything we called on him to do, extra work or other work. There were some helpers, of course, who could only do certain work; but where the helper was equal to do special work we used him in it, and that was his duty, to be used for anything we saw fit to put him to do." The same witness further testified that it was the custom to frequently send helpers and drivers out upon the trains as guards.

Thus it appears that helpers and drivers were frequently required, in the language of the witness, "to do extra work or other work," and that they were frequently sent out on the trains as guards, receiving extra compensation for such services, which is explanatory of the right reserved to the express company in the contract of employment to direct such service. This evidence, and the only evidence in the record, of the understanding of the terms of employment between plaintiff and the express company, is important, inasmuch as the ultimate burden of the judgment obtained by plaintiff in this action may fall upon the express company. It is also significant that it is corroborative of the terms of the written contract.

It is not reasonable that the express company should be required to execute a separate contract of employment with its. employees every time a different class of service is required or extra compensation allowed. Neither is it within the contemplation of the contractual relation here existing between the parties. If it were, every time a helper or driver is sent out on the railroad as a guard by the express company, a new application for employment and contract would have to be executed, since the class of service is different, and, from the evidence, it appears that extra compensation is allowed in each instance for such service. In other words, it would furnish an avenue for every helper or driver, when he had been temporarily transferred, as was the custom, into the capacity of a

guard, to escape the obligations of his contract, and hold the railroad company for damages in case of accident, since the compensation or salary paid while on the road is always different from the actual salary paid such employee in the service, either as helper or driver.

But there is a stronger reason for holding defendant not liable. Upon the ratification of the contract between defendant and the express company, and the waiver of the right to assert any claim for damages against the railroad company, plaintiff adopted its terms and conditions, and became so far a party to the agreement that he could not, while an employee of the express company, without the concurrence of defendant, so change the relation or disclaim his waiver, as to place himself in a position where he could hold defendant liable in damages. We are here dealing more particularly with plaintiff's relation to the railroad company than to the express company. This is a suit between the plaintiff and the railroad company, to which the express company is not a party.

The valuable consideration passing from defendant to the express company was the granting of special rates for the carriage of express matter and the free transportation of its agents and employees, in consideration of which the express company indemnified defendant against liability for injuries to its agents. The ratification signed by plaintiff was in the nature of an adoption of the terms of the contract between the express company and defendant, whereby he agreed to hold the express company free from liability to defendant under the indemnity clause of the contract; and the waiver was an agreement on plaintiff's part that he, as an employee of the express company, would hold defendant free from liability, and thus relieve it from enforcing its indemnity against the express company for damages which he might, but for the waiver, recover from defendant.

It is immaterial that no consideration passed from defendant to plaintiff for his execution of the waiver or forbearance. "To constitute a consideration, it is not absolutely necessary that a benefit should accrue to the person making the promise.

It is sufficient that something valuable flows from the person to whom it is made; and that the promise is the inducement to the transaction." *Violett* v. *Patton,* 5 Cranch, 142, 3 L. ed. 61. The consideration from defendant to the express company was, in this instance, the inducement to the whole transaction, and plaintiff, in consideration of becoming an employee of the express company, executed the waiver to defendant, thus establishing a contractual relation between plaintiff and defendant, which the latter could enforce as a bar so long as plaintiff remained in the employ of the express company, or until abrogated with the consent of defendant.

It is not important that the burden of this judgment may ultimately fall upon the express company. Plaintiff's contract with defendant obligated him to forbear from bringing any action against defendant for injuries received on or about defendant's trains, while engaged as an employee of the express company. The consideration is sufficient to operate as a bar to plaintiff's right of action, irrespective of the indemnity running from the express company to defendant.

For the reasons stated, I am of opinion that the judgment should be reversed.