13877

KIRBY v. GULF REFINING CO. *ET AL.*

(175 S. E., 535)

225

*Messrs. Robinson & Robinson,* for appellant

*Messrs. Moorman & Moorman* and *C. T. Graydon*, for respondent.

June 20, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

This action for damages for alleged slander, which was brought in the Court of Common Pleas for Richland County, was heard by Judge Grimball and a jury, and resulted in a verdict for plaintiff which awarded actual damages against both defendants, and punitive damages against the company alone.

The cardinal allegations made by the pleadings may be summarized as follows:

The complaint alleges the corporate capacity of Gulf Refining Company; that E. M. Livingston was the manager or operator of the company's filling station in Columbia, S. C.; that on the named day the defendant Livingston, in a rude, angry, and resentful manner, accused the plaintiff of then and there taking certain money from the cash register of the defendant company in the filling station there situate; that Livingston, being then and there about the business of the company, called the police, and upon the arrival of the officers again accused the plaintiff of taking the money from the cash register, and ordered the plaintiff to be taken to the city jail, where he was taken and incarcerated for about five hours; that the next morning the charges were dropped and plaintiff was allowed to go, and that determined the case finally; that the acts and statements complained of were done and made willfully and with malice, and charged the plaintiff with the crime of larceny.

The defendants, after due notice, moved the Court to strike from the complaint Paragraphs 7 and 8, which motion was heard and refused by Judge Featherstone, who held that the complaint stated but one cause of action, "that of slander as set out in Paragraph 5."

The defendants answered separately. Livingston's answer was a general denial; justification for his action because of the conduct of plaintiff; that the charges were dropped because when the 75 cents, which this defendant had charged plaintiff with abstracting from the cash register, were returned he had no desire to press the case against the plaintiff.

The answer of the company is: A general denial. An admission of its corporate capacity and the ownership of the filling station in question; and that Livingston was its agent but not the manager of the filling station; alleges the same facts of justification upon which Livingston relies.

Motions to set aside this verdict and for a new trial were refused, and this appeal followed on behalf of the Gulf Refining Company.

The exceptions are fifteen in number, but the counsel for appellant confine their argument to three issues, viz.:

1. Can a verdict against a master for punitive damages in a slander case stand where no verdict for punitive damages is rendered against the servant uttering the slander?

2. Did the trial Judge err in refusing to submit the issue of qualified privilege to the jury?

3. Did the trial Judge charge on the facts?

Necessarily minor questions arise in the consideration of the issues thus presented.

It is advisable to dispose of the issues presented by appellant's argument in their inverse order.

The charge of the Judge, complained of in the exceptions as touching upon the facts, is contained in these words of the Court: "I charge you as a matter of law that if you find that the words were spoken charging

the plaintiff with the crime of larceny of any kind it would be your duty to find general damages in behalf of the plaintiff *substantial in amount.*" The alleged error is that the Court should have used the words "but temperate" after the word "substantial."

·This identical question was made in the case of *Duncan v. Record Publishing Company,* 145 S. C., 196, 143 S. E., 31, and decided adversely to appellant's contention.

Did the trial Court err in refusing to submit the issue of qualified privilege to the jury?

This question is disposed of by the fact that appellant did not plead the issue of qualified privilege either in justification, or mitigation of damages.

"We have already seen it to be a fundamental principle of pleading under the Code that every fact must be affirmatively pleaded by the party who is first required to prove it, and that no new matter can be offered in evidence by a defendant who has simply denied plaintiff's allegations, unless it tends to disprove a fact to be in the first instance affirmatively established by the plaintiff. * * * Facts in justification, either as showing the truth of the charge, or that the publication was privileged, were always required to be specifically pleaded." Bliss on Code Pleading, 430.

An examination of the cases cited by appellant does not disclose whether the defense of qualified privilege was, or was not, pleaded in them. Unquestionably that issue was not specially pleaded in the present case, nor do we think it can be held to be inferable from the answer of either defendant.

A "qualified privilege" is thus defined in 17 R. C. L., 341: "A communication made in good faith on any subject-matter in which the person communicating has an interest, or in reference to which he has a duty."

"The communication is privileged if made in good faith and without actual malice." *Switzer v. Express Co.,* 119 S. C., 249, 112 S. E., 110, 114, 26 A. L. R., 819.

These are affirmative defenses which, if sustained, throw the burden of proof of actual malice on plaintiff; surely plaintiff is entitled to be informed of that issue by the answer.

The answers in the present case admit that Livingston was an employee of the Gulf Refining Company, but they do not allege that he was acting in good faith or within the scope of his duty to his employer and without malice.

In the case of *Fitchette v. Sumter Hardwood Co.*, 145 S. C., 53, 142 S. E., 828, these things were expressly pleaded.

The trial Judge repeatedly charged the jury that to entitle the plaintiff to recover in this action for slander it was necessary for him to prove "that there must have been a statement as alleged in Paragrpah 5 of the complaint; secondly, that such statement was false and that it was heard by a third person or persons and *that it was made with malice."* (Italics added.)

The effect of the plea of qualified privilege is to cast upon plaintiff the burden of proving express or actual malice; this burden was put upon plaintiff by the charge; it would seem then that defendant suffered no harm from the refusal to charge his request relating to qualified privilege.

The serious issue is made by the question whether there was error in refusing to set aside the verdict for punitive damages rendered against the Gulf Refining Company alone.

We may here dispose of plaintiff's contention that the company ratified the acts of Livingston through the conduct of Bundrick, the manager of the filling station, and Glenn and Shaffer, who checked the register, in leaving plaintiff in jail after learning of the occurrence. Bundrick did not come on duty until half past 3 o'clock in the afternoon. Plaintiff had been committed to jail upon the order of Livingston and was held for investigation, pending the checking of the cash register. Certainly the defendants were

entitled to reasonable time in which to have this done. Glenn and Shaffer, who did the checking, did not know of the occurrence until half past 6 o'clock in the evening. In the meantime plaintiff had been discharged.

We think the question of ratification is not involved in the issue now being discussed. There can be no doubt that this action was predicated and tried upon the ground that Gulf Refining Company is liable for a tort committed by its agent, Livingston, then engaged in the business of his employer. Paragraphs 5, 6, 7 and 8 of the complaint so expressly state. The order of Judge Featherstone holds that there is but one cause of action stated, and that was for a slander committed by the servant. Whatever was done by Gulf Refining Company in and about this actual occurrence was done by its agent Livingston. The case throughout was tried upon the theory that Gulf Refining Company was liable because of these acts of its agent Livingston. Therefore the present issue is: If the agent is exonerated, can the principal be held liable? In other words, the jury have acquitted Livingston of malice in what he did in the premises and have held Gulf Refining Company liable in punitive damages. Malice is the essential ingredient necessary to sustain a verdict for punitive damages. The jury say that Livingston, the agent, is innocent of malice, but that Gulf Refining Company, who acted alone through its said agent, is guilty of malice. How can that be?

In the case of *Sparks v. Atlantic Coast Line R. Co. et al.,* 104 S. C., 266, 88 S. E., 739, 740, the railroad was sued for damages on the allegation that its conductor had ejected from its moving train a trespasser, who was thereby killed. There was a verdict against the railroad company alone, which was reversed on appeal. Mr. Justice Gage for the Court said: "The conductor was two persons in one; he stood for the general manager and for himself, too. The act he did and the *intent* he had when he pitched out the trespasser were the two facts to be established against the con-

ductor and against the general manager. These facts were traceable to the general manager *only through* the conductor. If the conductor had no evil intent, there was no other chance for the general manager to have it. * * * In all our cases there were other operating agencies of the principal than the servant sued as joint tort-feasor."

In the case of *Jones v. Southern Ry. Co. et al.,* 106 S. C., 20, 90 S. E., 183, the railroad was sued jointly with its agents for the act of the agents of the company in permitting a cat with rabies, which fact was known to the agents, to be on the company's premises, and by which plaintiff was bitten. A verdict was rendered against the railroad alone. Mr. Justice Hydrick for this Court, on appeal, said: "'The verdict is illogical and cannot stand, as no delict of the company was proved other than through and by the agency of Parks and Gilliard, one or both. The company's liability is predicated solely upon the acts or omissions of one or both of them; and if neither of them is liable, it necessarily follows that the company is not. It would be unreasonable to say that the servant did no wrong, but, nevertheless, his master is liable, when the only wrong charged against the master is that of the servant."

No case dealing with this subject, which has been before this Court, has been more thoroughly considered and more clearly decided than that of *Johnson v. A. C. L. R. Co. et al.,* 142 S. C., 125, 140 S. E., 443, 445. The complaint in that case alleged that the agents of the railroad company went into the car where plaintiff, colloquially known as the "newsboy," had his containers and trunks of merchandise, and forced him to open them in a search for contraband liquor. The verdict was in these words: "We find for the plaintiff $1,500.00 punitive $500.00 actual damage against the A. C. L. R. R. Co.; $300.00 punitive damage and $200.00 actual damage against J. A. Dorsey." On motion for new trial the Circuit Judge required the verdict for actual damages to be equalized as between the defendants, but permitted the ver-

dict to stand as to punitive damages. In the consideration of the case Mr. Chief Justice Blease, then an Associate Justice, laid down this fundamental postulate: "When the master and the servant are sued together for the same act of negligence or willful tort, and the master's liability rests solely upon the servant's conduct, a verdict against the master alone is illogical and cannot stand."

This case is cited by respondent as authority in support of the finding of punitive damages against the master alone. It does not admit of that construction. The Court held: "Since the servant, found guilty, was acting about the master's business, and the jury found that the servant was guilty of the willful torts charged against him, it necessarily followed, by our cases, that the master as well as the servant was liable to the plaintiff in damages."

In the case at present before the Court for decision the jury acquitted the servant of willfulness, which alone justified the infliction of punitive damages, and yet assessed punitive damages against the master. It is patent that in this respect the *Johnson case* does not apply.

In the case of *Weeks v. Carolina Power & Light Co.*, 156 S. C., 158, 153 S. E., 119, 121, it was held in the opinion of Mr. Justice Blease as follows: "Undoubtedly, as the appellant contends, the law is that where a master and his servant are sued together for the same act of negligence or willful tort, and the master's liability rests solely on the servant's conduct, a verdict against *the master alone* is illogical and cannot stand." Citing *Johnson v. A. C. L. R. Co., supra.*

It is true that a verdict against the master alone was upheld in that case because there were allegations and proof that the delict was caused by the master and a servant other than the one sued with him. There is neither allegation nor proof to that effect in our case.

In the case of *Durst v. Southern Ry. Co. et al.*, 161 S. C., 498, 159 S. E., 844, it appears that upon the first trial

of the case the verdict was against the railroad company alone. See *Id.,* 130 S. C., 165, 125 S. E., 651. The trial Judge had charged that the jury could find a verdict against the railroad company alone. This Court by Mr. Justice Cothran said: "From his ability and learning it must be assumed that the Circuit Judge was familiar with the established rule in this State, that in an action against the master and servant jointly, based solely upon the negligence of the servant, a verdict against the master alone will not be allowed to stand." Citing the *Sparks* and *Jones cases, supra.*

Upon the case being remanded for new trial the complaint was amended by bringing in new parties and by alleging acts of negligence of other servants of the railway company. On the second trial the verdict was against the railway company and Williams. This Court held that Williams had been released by the result of the first trial, but that the verdict against the railway alone would stand because there were allegations and proof of acts of negligence on the part of the railway and others of its servants than those alleged to have been committed jointly with Williams.

Again it is proper to say that no allegations, nor proof, are found in the present case except those charged and proved in connection with Livingston.

In the case of *Cherry v. Singer Sewing Machine Co. et al.,* 165 S. C., 451, 164 S. E., 126, 128, the cases in our own jurisdiction affecting this question are collated, including, in addition to those specifically cited, that of *Greer v. Highway Department,* 160 S. C., 510, 159 S. E., 35-37.

It was held in *Cherry v. Sewing Machine Company* that: "The sewing machine company had a chattel mortgage on the machine, the condition of which was broken. It was lawful for it to take the machine in its possession. It delegated that duty to Dantzler. If in the discharge of it Dantzler committed tortious acts, it was unreasonable to exonerate him thereof and hold the sewing machine company liable therefor in damages. The verdict of the jury, in effect, said

that Dantzler did no wrong in taking possession of the machine which rendered him liable in .damages; but that the Singer Sewing Machine Company was liable in actual as well as punitive damages for the acts of Dantzler which the jury said were not tortious."

Respondent seeks to sustain the verdict for punitive damages rendered against appellant alone upon the authority of the case of *Piner v. Standard Oil Co.,* 163 S. C., 302, 161 S. E., 504 (and not 162 S. C. as cited in respondent's brief). The case does not bear the application sought to be made of it. The record discloses that the verdict against the company alone was sustained because it was proved that the company was guilty of other acts of negligence than those charged to it in connection with its agent and codefendant Cooper.

It is argued for respondent that the verdict for actual damages against the Gulf Refining Company and Livingston is sufficient to sustain the verdict for punitive damages against the company alone. The argument is fallacious. There can be no finding of punitive damages except upon a presumption or proof of malice. The only liability of the company was founded upon the conduct of Livingston. In the quaint language of Mr. Justice Gage in the *Sparks case,* *supra:* "If the conductor had no evil intent, there was no other chance for the general manager to have it."

We say here, if Livingston had no malice in his conduct toward plaintiff, and the jury by their verdict have said he had none, "there was no other chance for (the Gulf Refining Company) to have it."

The presiding Judge, in his charge, instructed the jury that if they found actual damages they must find the same amount against both defendants. He then instructed them as follows: "If you gentlemen see fit, in your judgment under the law and the facts, to award punitive damages in this case, you may award a greater amount of punitive damages against one defendant than you do against another."

Nowhere in the charge is there anything from which the jury could have deduced the inference that it could find punitive damages against the Gulf Refining Company alone.

It was error not to set aside the verdict for punitive damages against the company.

The judgment of this Court is that the judgment of the Circuit Court be affirmed as to the finding for actual damages against both defendants, and be reversed as to the finding of punitive damages against Gulf Refining Company alone.

MR. CHIEF JUSTICE BLEASE, MESSRS. JUSTICES STABLER and CARTER and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.