14116

THOMAS v. SOUTHERN GROCERY STORES, INC., *ET AL.*

(181 S. E., 565)

· *Messrs. Haynsworth & Haynsworth, Julien D. Wyatt* and *M. E. Kilpatrick,* for appellant,

*Messrs. Williams & Henry, J. O. Williams* and *W. C. Mann.* for respondent,

July 26, 1935.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

The facts out of which this action arose, briefly stated, are these: The defendant Southern Grocery Stores, Inc., owns and operates, under the trade-name of "Rogers," a chain of stores in South Carolina and other states, with its home offices in the City of Atlanta. For several years prior to July 28, 1933, the plaintiff, John Thomas, was manager of

the store located at Easley, S. C. On that date, July 28th, C. H. Moore, vice-president of the corporation, sent to A. J. Hambrick, its South Carolina superintendent, the following telegram: "Check John Thomas out immediately, $149.00 short."

The plaintiff alleged that this telegram, and the words and acts accompanying it, constituted libel and slander; three causes of action being set up in the complaint as follows: (1) That the defendant Hambrick and other agents of the corporation reported to the company's home office that the plaintiff was short at the Easley store in the sum of $149.00 and requested instructions by wire as to what disposition should be made of the matter; that Moore, in response thereto, acting jointly with the defendant Hambrick and for the defendant corporation, "issued, circulated and published of and concerning plaintiff by delivery to and transmission over the Western Union Telegraph Company" from Atlanta to Spartanburg, the above "false, malicious, defamatory and libelous" telegram. (2) That Hambrick, upon receipt of the telegram, went to the Easley store, "and while acting within the scope of his authority, wichedly intending to injure the plaintiff in his business, reputation and good name, did jointly for himself and defendant corporation, willfully, wantonly, maliciously and falsely issue, publish and circulate the aforesaid and defamatory matter of and concerning plaintiff by reading the said telegram aloud in the presence of clerks, customers and other persons in said store and by permitting J. H. Hudson and others to read the said telegram; that the defendants, by their joint publication aforesaid, meant to and did charge that the plaintiff had committed a breach of trust with fraudulent intent, a crime indictable under the laws of South Carolina" and that "acting further upon said telegram, the said A. J. Hambrick discharged or fired plaintiff from said defendant's store immediately after publishing the libelous matter aforesaid." (3) That Hambrick, while at the Easley store, and acting within the scope of his

authority, jointly for himself and the defendant corporation, and willfully intending to injure the plaintiff in his business, good name, and reputation, uttered and published the following false and slanderous matter of and concerning Thomas, in the presence of clerks, customers, and others: "You are short with us $149.00. We are satisfied you are guilty. We are through with you and want you to leave our store immediately." Judgment was asked for on each cause of action in the sum of $25,000.00.

The defendants, answering the complaint, alleged that Hambrick, in the performance of his regular duties, periodically checked all the stores under his supervision, and forwarded to the Atlanta office reports "covering the operation of the store of which plaintiff was manager; that the report for the period from June 29, 1933, to July 18, 1933, showed an operating loss of $149.31"; and that this loss was what was meant by the word "short" in the telegram, there being no intention to charge plaintiff "with misappropriation of money with fraudulent intent, or breach of trust with fraudulent intent." For a second defense, the defendants alleged that the telegram was read to Thomas only at his insistence, and that if its contents became known to a third person, it was through plaintiff's own acts; and further, that all statements made and acts done by the defendants "were confidential and privileged."

On trial of the case, Judge Grimball overruled the defendants' motion for a directed verdict, and the jury found for the plaintiff on the second cause of action $10,000.00 actual damages against the defendant corporation and $200-.00 actual damages against the defendant Hambrick. Counsel for Thomas then suggested to the Court that it might be proper for the jury to make a finding on each cause of action, and stated that they might find for the defendants on the first and third causes. This being agreed to by opposing counsel, a verdict was returned in the following form: "On the first cause of action we find for the defendant no cause

of action, W. A. Perry, Foreman; on the second cause of action we find for the plaintiff ten thousand dollars actual damages against the Southern Grocery Stores, Inc., and two hundred dollars against A. J. Hambrick; W. A. Perry Foreman; on the third cause of action we find for the defendant no cause of action."

Thereafter the Southern Grocery Stores, Inc., moved for a new trial upon grounds which we will later consider. The Court refused the motion, and that defendant appeals.

By its first exception, the appellant imputes error to the trial Judge in refusing to direct a verdict in its favor "on the ground that the only reasonable conclusion to be drawn from the testimony was that the alleged publication of the alleged libel was made upon the insistence of the plaintiff and in the office of the store."

The plaintiff testified that he had worked for the defendant corporation as a store manager for a number of years; that the store handled perishable goods on which was allowed a 5 per cent. loss, but that the loss at times exceeded that figure; that in 1929, Hudson, who was district superintendent of the company, and whose attitude toward the witness was very unfriendly became so hostile that he finally discharged him; that the witness then went to Atlanta and saw Moore, the vice-president and general manager, with the result that Moore placed him back at work as manager of the Easley store, with Hudson as superintendent; that Hudson's attitude toward him became so unfriendly that after seven months he discharged him again; that he then went back to Atlanta to see Moore, who reinstated him as manager of the store at Easley, with Hambrick as superintendent; and that Hambrick's attitude toward the witness at the last was also unfriendly, finding fault where no fault existed, while Hudson, who was also at the store at that time, remained hostile and disagreeable.

It appears from the record that the Easley store was approximately one hundred feet long and divided in the cen-

ter by a partition constructed of shelves about six feet high, with lattice work at the top of the shelving going to the ceiling; that there was a door in the partition to the left going in; and that the office was at the rear of the store and was separated by this partition from the main or front part where the customers and clerks were. The plaintiff stated that on July 28, 1933, he was at a merchants' meeting at the city hall, and that after it was over he returned to the store accompanied by Hambrick and Hudson, who were also present at the meeting; that when he went back in the store and put on his apron to go to work, Hambrick and Hudson came where he was, and Hambrick told him that they were going to check him out; that thereupon the witness asked what he had done and why they were going to check him out, and that Hambrick, with Hudson by his side, then read aloud the telegram; and that there were other persons, clerks, and two or three customers, in the store at the time.

Other witnesses testified that they were in the store and heard a part of the conversation between Thomas and Hambrick. Mrs. Thomas stated that when she came into the store and started back to the office she heard an angry voice there and stopped, and that Hambrick read the telegram to her husband and told him that it was proof of his guilt, and that they did not need his services any longer.

The contention of the appellant is that the alleged publication, as shown by the testimony, was induced by the plaintiff himself, and that this made the reading of the telegram privileged.

In 36 C. J., 1224, the general rule is thus stated: "If plaintiff consented to, or authorized the publication complained of, he cannot recover for any injury sustained by reason of the publication; and the same rule applies to a publication solicited or induced by inquiry on the part of plaintiff or his agent, at least if it was procured by the fraudulent contrivance of plaintiff himself, with a view to an action."

But at page 1231 of the same volume it is said: "Where a person originates a slander and afterward repeats it in answer to a question by the person slandered, made in good faith, merely to ascertain whether defendant had made such charge, the repetition is actionable."

And at page 1246: "A party cannot take advantage of such a situation in order to gratify his malice, and plaintiff may recover even where the publication was invited by him, upon proof of express malice on the part of defendant."

In Newell on Slander and Libel, 452, the following appears: "If the only publication that can be proved is one made by the defendant in answer to an application from the plaintiff, or some agent of the plaintiff demanding explanation, such answer, if fair and relevant, will be held privileged."

The appellant by its verified answer, as we have indicated, alleged that the plaintiff was discharged solely on the ground that the store under his management was not being operated successfully; admitted sending the telegram set out in the complaint; but denied that it was intended to charge the plaintiff with any fraudulent act or conduct. On the trial of the case, however, it attempted to prove that it sent a different telegram, a night letter, in which it was stated that the Easley store showed an inventory shortage, and that Thomas should be advised that he would not be given an audience. As the original telegram could not be produced, the Court left it to the jury to say what was the message sent. Moore testified that Hambrick, while the telegram was addressed to him, had nothing to do with its composition or the sending of it. There is nothing in the testimony that indicates that the publication solicited by the plaintiff was procured by any fraudulent contrivance on his part, with a view to an action; on the contrary, it appears that he sought the information in good faith. Whatever differences may have existed at times between him and Hudson and Hambrick, the testimony does not show that he was ever

even suspected of dishonesty in his handling of the company's money or goods. Naturally in these circumstances, when he made the inquiry of Hambrick that he did, he had no reason to think that he would be charged with a crime, as he says he was. Furthermore, it was for the jury to say, under the facts of the case, whether the appellant abused the privilege of the occasion. If the plaintiff was being discharged, as is claimed, because he could not successfully operate the store, then the appellant was well within its rights to have so stated that fact to him. This, the respondent claims, it did not do; but, on the contrary, through Hambrick, and acting jointly with him, charged the plaintiff, by a reading of the telegram which it admitted in its answer that it had sent, with having stolen cash from its store in the sum of $149.00. Upon consideration of all the facts and circumstances disclosed by the record, we are of opinion that the trial Judge was correct in overruling the motion for a directed verdict on this ground.

Appellant relies upon *Boling v. Clinton Cotton Mills,* 163 S. C., 13, 161 S. E., 195, as sustaining its contention; but that case is easily differentiated from the case at bar.

The Court's refusal to charge the jury as follows is made the ground of an exception: "If Thomas on being discharged asked Hambrick as to the reasons therefor and if Hambrick in response to such request told him that it was because of a shortage, then, this, even though the charge were false, would not be a slander for which this action would lie, even though other persons were near enough to hear the statement."

What we have already said disposes of this assignment of error. If the defendants were not entitled to a directed verdict, as we have held, clearly they were not entitled to have the jury instructed as requested.

The third question presented for consideration is whether the jury, under the facts of this case, could assess a greater amount of actual damages against

Southern Grocery Stores, Inc., on respondent's second cause of action, than was assessed against the defendant A. J. Hambrick.

The appellant argues that in an action against the master and servant for a tort committed by the servant, whose wrong is imputable to the master, the amount of actual damages awarded against the master cannot exceed the damages awarded against the servant; and that the case at bar is such a one. This contention of the corporation, when applied to this case, is predicated upon the assumption that its servant and agent, Hambrick, was the sole and only perpetrator of the wrong complained of and that it did not participate therein through the acts or conduct of its other agents or servants; and that, therefore, as Hambrick's principal and master, its liability was fixed by and limited to the extent of his liability.

In *Johnson v. Atlantic Coast Line R. Co.,* 142 S. C., 125, 140 S. E., 443, cited and relied upon by the appellant, the rule of law is recognized that where a tort is committed solely by a servant, there cannot be an apportionment of actual damages between the servant and the master in an action brought jointly against them for the commission of such tort. In other words, in such case the master and servant should be required to respond in a like amount of actual damages. In the case at bar, therefore, if the wrong complained of had been committed by Hambrick alone and were imputable to the corporation only through him, the position taken by the appellant would be sound. See, generally, *Fredericks v. Commercial Credit Co.,* 145 S. C., 380, 143 S. E., 179; *Cherry v. Singer Sewing Machine Co.,* 165 S. C., 451, 164 S. E., 126; *Kirby v. Gulf Refining Co.,* 173 S. C., 224, 175 S. E., 535; *Sparks v. Atlantic Coast Line R. Co.,* 104 S. C., 266, 88 S. E., 739.

These cases, however, are not applicable here. In none of them does it appear that the master, through other servants or agents, as in the case at bar, participated in the

wrong done by authorization, ratification, or otherwise. Here, through its vice-president, Moore, not a party to this action, the appellant composed and sent to its servant Hambrick the alleged libelous telegram; and it can hardly be argued that, if the telegram was a libel upon the plaintiff, the company would not be liable for the wrongful acts of Moore, except for which no tort would have been committed. Furthermore, the testimony tended to show that Hambrick, in what he did, was simply carrying out the instructions and intentions of his master, and acted merely as its mouthpiece. As to what amounts to a publication in a case of this kind, see Newell on Slander and Libel, page 220; *Connelly v. State Co.*, 152 S. C., 1, 149 S. E., 266. We think that a new trial was properly refused on the ground stated.

The appellant also contends that Judge Grimball committed error in refusing to grant a new trial on the ground that the verdict was contrary to the express charge of the Court. It is true the Judge instructed the jury that, if they found for the plaintiff on the second cause of action, the verdict against the defendants for actual damages should be for a like amount against each of them. This charge, however, when the testimony is considered, was too favorable to the defendants, and the action of the jury affords no just ground for complaint. It appears that the presiding Judge, in passing upon the motion for a new trial, thought so, and we are constrained to agree with him. See *Campbell v. Western Union Telegraph Co.*, 74 S. C., 300, 54 S. E., 571.

The appellant finally complains that "the verdict for the plaintiff on the second count is wholly inconsistent with the verdict for the defendant on the first count." This objection seems to be without substantial merit. The following allegations are a part of the second cause of action:

"Upon information and belief plaintiff alleges that on or about July 28, 1933, at which time he was in the employ of defendant, Southern Grocery Stores, Inc., as he had been

for approximately twelve (12) years, C. H. Moore, Vice-president of said defendant, acting within the scope of his authority as said official of said defendant, wickedly intending to injure this plaintiff in his business, reputation and good name, did willfully, wantonly, maliciously and falsely issue and cause to be delivered to the said A. J. Hambrick the following telegram of and concerning the plaintiff, to wit: 'Check John Thomas out immediately, $149.00 short.'

"That on or about said date the said Hambrick went to said defendant's store at Easley, South Carolina, and while acting within the scope of his authority, wickedly intending to injure the plaintiff in his business, reputation and good name, did jointly for himself and defendant corporation, willfully, wantonly, maliciously, and falsely issue, publish and circulate the aforesaid false and defamatory matter of and concerning the plaintiff. *  *  *

"That the shortage mentioned in the publication aforesaid by the defendants had reference to money realized from the sale of defendant's, the said Southern Grocery Stores, Inc., goods, which money plaintiff was to hold in trust and the defendants, by their joint publication aforesaid meant to and did charge, and were understood by those hearing the same, to charge this plaintiff with willfully and knowingly taking money from said defendant's store and appropriating the same to his own use with the fraudulent intent of depriving said defendant of the use of same, thereby charging that he did commit a breach of trust with fraudulent intention, a crime indictable under the laws of South Carolina and involving moral turpitude on the part of the plaintiff; that acting upon said telegram the said Hambrick discharged or fired plaintiff from said defendant's store immediately after publishing the libelous matter aforesaid; that plaintiff was commanded to leave the store at once; that although the said Hambrick was making an audit and inventory of the store at the time, he refused to permit plaintiff either to assist in the taking

of such inventory or the making of such audit or to remain and look on.

"That as a result of the publication and circulation of said defamatory matter, plaintiff has been unable to secure employment by which to support himself and four children; that the defendants knew or should have known that such injury would result from the circulation and publication of said defamatory matter."

As we have indicated, the jury, after deliberating for a while, reached a verdict on the second cause of action and this verdict was published. At that time they had made no finding whatever as to the first and third causes. It appears, in order to get the matter ended, the attorneys for the plaintiff offered to consent to a verdict for the defendant on these counts. Opposing counsel agreed to this, and the jury, in compliance with such arrangement, then put their verdict in the form herein set out. We do not think, from an analysis of the complaint, and in view of what actually occurred in the rendition and publication of the verdicts, that the appellant is in a position to claim that the issues raised by the second cause of action were rendered *res adjudicata* by the verdicts on the first and third causes.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES CARTER, BAKER and FISHBURNE concur.

MR. JUSTICE BONHAM (concurring in part and dissenting in part) :

I concur in the leading opinion, written by Mr. Chief Justice Stabler, in all the positions taken by him, save one. It is proper that I state my grounds of dissent as to that.

The action is one for libel and slander. The main office of appellant is at Atlanta, Ga.; it has a store at Easley, S. C., of which respondent was manager. July 28, 1933, C. H.

Moore, vice-president of the corporation, sent the following telegram to A. J. Hambrick, the superintendent of its stores in South Carolina: "Check John Thomas out immediately, $149.00 short."

The action for libel and slander followed. The complaint states three causes of action, viz.:

(1) That the defendant Hambrick and other agents of the corporation reported to the company's home office that plaintiff was short in the sum of $149.00, and requested instructions by wire what to do about it; that Moore, acting jointly with the defendant Hambrick and for the corporation, issued "the above false, malicious, defamatory and libelous telegram."

(2) *That Hambrick upon receipt of the telegram went to the Easley store, "and while acting within the scope of his authority, wickedly intending to injure the plaintiff in his business, reputation, and good name, did jointly for himself and defendant corporation, maliciously and falsely issue, publish and circulate the aforesaid false and defamatory matter of and concerning plaintiff by reading the said telegram aloud in the presence of clerks, customers and other persons in the said store, and by permitting J. H. Hudson and others to read the said telegram; that the defendants by their joint publication aforesaid meant to and did charge that plaintiff had committed a breach of trust with fraudulent intent.* * * *"* (Italics added.)

(3) That Hambrick, while at the Easley store and acting within the scope of his authority, jointly for himself and the defendant corporation, and willfully intending to injure plaintiff in his business, good name, and reputation, uttered and published the following false and slanderous matter of and concerning plaintiff in the presence of clerks, customers, and others: "You are short with us $149.00. We are satisfied you are guilty. We are through with you and want you to leave our store immediately."

It is pertinent to say that the defendants for answer said, among other things, that the language contained in the telegram, viz., "$149.00 short," was not intended to and did not charge Thomas with misappropriating money with fraudulent intent but was meant to show that the store of which plaintiff was manager showed an operating loss of $149.00 from June 29 to July 18.

The jury found a verdict for plaintiff of $10,000.00 actual damages against the corporation, and $200.00 actual damages against Hambrick, *on the second cause of action.* Thereupon plaintiff's counsel suggested that the jury find for the defendants on the first and third causes of action, to which defendants' counsel consented. Whereupon the jury rendered the following verdict: "On the first cause of action we find for the defendant no cause of action. W. A. Perry, Foreman. On the second cause of action we find for the plaintiff ten thousand dollars actual damages against the Southern Grocery Stores, Inc., and two hundred dollars against A. J. Hambrick. W. A. Perry, Foreman. On the third cause of action we find for the defendant no cause of action."

No rule of law is more clearly established in this jurisdiction than this: In an action against a master and servant for negligence or a tort committed by the servant, whose wrong is imputable to the master, the amount of actual damages awarded against the master cannot exceed the amount awarded against the servant. It is needless to cite authorities. It will not be denied that this is the established law of the jurisdiction.

It would seem clear then that the verdict which assesses $10,000.00 against the Southern Grocery Stores and $200.00 against Hambrick cannot stand.

But it is argued in the main opinion that there is proof that the corporation acted through another agent than Hambrick, to wit, C. H. Moore, who sent the telegram to Hambrick, and that the jury may have predicated the larger ver-

dict against the corporation on that view. The sufficient answer to that proposition is that the jury in express language has declared that there was "no cause of action" on the first alleged cause of action, which, as is shown by the record, is based solely on the fact that C. H. Moore, vice-president of the corporation, sent the telegram to Hambrick. In other words the jury, in effect, has said that the sending of the telegram gave no cause of action; that the telegram in itself was harmless; that it only became harmful through the action, conduct, and language of Hambrick as set out in the second cause of action. The jury did not say we find for the defendant on the first cause of action and stop there, but added as if to emphasize their meaning, the significant words: "No cause of action."

The testimony of Mr. C. H. Moore discloses that on two other occasions Thomas had been discharged for running short in the production of business for the store; that his importunities and relation of his poor circumstances induced the corporation to give him "another chance"; that the corporation had shown great leniency to and consideration for Thomas; that the language of the telegram "$149.00 short" related to this shortage in production and must have been so understood by Thomas; there was never an intent to charge him with a misappropriation of money with fraudulent intent. Evidently the testimony of Moore must have impressed the jury, as it will impress any dispassionate person, that it was true. Hence the jury found that as to him there was no cause of action.

On the contrary, the jury must have been deeply impressed with the evidence that Hambrick needlessly published the telegram, rudely told Thomas he was guilty of breach of trust, and discharged him in such manner as to cause him shame and expose him to public criticism.

I submit that the whole verdict in its final form bespeaks the thought and opinion of the jury in the plainest and most certain terms, to wit, that Hambrick by his foolish conduct and

language in the store at Easley was the sole perpetrator of the delict which brought about the action. It appears to me that that is the only logical and reasonable deduction which can be made from that verdict. Any other must rest on conjecture, or the hypothesis that the jury considered Moore as partly responsible, in spite of the fact that the jury exonerates him.

The question of the joint liability of master and servant and the measure of damages against them is treated in the case of *Kirby v. Gulf Refining Co.,* 173 S. C., 224, 175 S. E., 535, where some of the authorities are collated.

In the case of *Johnson v. Atlantic Coast Line R. Co. et al.,* 142 S. C., 125, 140 S. E., 443, the jury found against the railroad $1,500.00 punitive and $500.00 actual damages; and against Dorsey, the agent, $300.00 punitive and $200.00 actual damages. On motion for new trial the Circuit Judge required the verdict for actual damages to be equalized as between the defendants, but permitted the verdict to stand as to punitive damages. This was sustained on appeal.

In the case of *Weeks v. Carolina Power & Light Co.,* 156 S. C., 158, 153 S. E., 119, 121, this Court said: "Undoubtedly, as the appellant contends, the law is that where a master and his servant are sued together for the same act of negligence or willful tort, and the master's liability rests solely on the servant's conduct, a verdict against the master alone is illogical and cannot stand." Citing the *Johnson case supra.*

I am in accord with the conclusions of the main opinion except as it relates to the difference found in the verdict against the Southern Grocery Stores, Inc., and Hambrick. As to that I am obliged by my opinion of the law applicable to the question, and my view of the facts, to submit this dissenting opinion.

I think the case should be sent back for a new trial, unless within ten days after the remittitur goes down the plaintiff shall enter on the record of the judgment a reduction of the

verdict against Southern Grocery Stores, Inc., from $10,000-.00 to $200.00 to equalize it with the verdict against A. J. Hambrick.