8392

FONVILLE v. ATLANTA & CHARLOTTE AIR LINE RY. CO.

1. EVIDENCE—CRIMINAL CASES—JUDGMENT.—Records in criminal cases are not admissible in civil cases as evidence of the facts upon which a conviction was had. Here it is held that the record of the criminal court is not admissible in an action against a railroad company for a negligent killing to prove that the defendant was convicted of murder for causing the wreck, also that it is not admissible to prove his confession that he had caused the wreck.
   *Coleman* v. *Frazer,* 4 Rich. 146, *distinguished from this case.*
   MR. JUSTICE WOODS *dissents.*
2. PLEADINGS—RAILROADS—SWITCHES.— Under a liberal construction of the allegations as to the negligent placing of a switch light so it could not be seen by an approaching engineer, it is held proper to admit evidence of negligence in not placing a distant switch light.
3. ISSUES—IBID.—IBID.—The issue whether the engineer's death was proximately caused by the negligence of the railroad company in the arrangement of its switch lights or the malicious act of another party in opening the switch, was properly sent to the jury.
4. REHEARING refused.

Before ERNEST GARY, J., Greenville, November term, 1910. Affirmed.

Action by Georgie E. Fonville, as administratrix of Wm. J. Fonville, against the Atlanta and Charlotte Air Line Rail-

way Company and Southern Railway Company.    Defendants appeal.

*Messrs. Cothran, Dean & Cothran,* for appellants, cite: *As to the admission of the confessions, conviction and sentence of Agnew:* 4 Rich. L. 146; 1 Wig. Ev., sec. 142; 6 Ency. 65; 16 Ency. 246.    *As to admission of evidence as to necessity of distance signal light:* 89 S. C. 384; 76 S. C. 560; 82 S. C. 347; 84 S. C. 60.    *Province of the Court on the issue of proximate cause:* 21 Ency. 509; 2 LaBat., sec. 805; 38 S. C. 282; 58 S. C. 491; 67 S. C. 290; 81 S. C. 100; 80 S. C. 1; 78 S. C. 374; 77 S. C. 328; 86 S. C. 69; 75 S. C. 375; 31 S. E. 914; 41 L. R. A. 794.    *Negligence defined:* 21 Ency. 457; 21 S. C. 466.    *Duty of master as to furnishing a reasonably safe place:* 20 Ency. 55, 61; 38 L. R. A. 134; 4 Thomp. Neg., sec. 3767, 3774; 2 McM. 403; 8 Rich. 120; 3 S. C. 450.    *Intervening cause:* 25 S. C. 446; 31 S. C. 398; 76 S. C. 202; 94 U. S. 469; 76 S. C. 204; 80 S. C. 232; 166 U. S. 521; 104 Pa. 315; 55 Fed. 952; 69 Fed. 525; 74 Fed. 155; 13 L. R. A. 97; 7 Wall. 44; 94 U. S. 469; 79 Ala. 315; 10 Am. R. 205; 51 Tex. 121; 14 L. R. A. 749; 111 Mass. 139; 59 L. R. A. 109; 41 L. R. A. 794; 176 Fed. 890; 56 Fed. 993; 86 Fed. 924; 1 LaBat., sec. 129; 11 L. R. A. (N. S.) 1041, 738; 29 Cyc. 499; 9 L. R. A. (N. S.) 458; 40 S. E. 300; 71 N. E. 509; Wat. Per. Inj., sec. 59; 9 L. R. A. (N. S.) 972; 17 So. 517; 124 Fed. 113; 71 N. E. 509; 70 N. E. 199; 73 N. E. 117; 55 Fed. 1021; 86 Fed. 924; 1 Suth. Dam., sec. 34; 8 Ency. 571; 58 L. R. A. 399; 35 N. J. 17; Whart. Neg., sec. 134; 21 Ency. 494; 29 Cyc. 498; 67 S. C. 293.

*Messrs. Haynsworth & Haynsworth* and *John Gary Evans,* contra.    *Messrs. Haynsworth & Haynsworth,* cite: *Judgment in criminal Court as evidence in civil:* 7 Ency. Ev. 850; 31 C. C. A. 157; 26 Pac. 70; 1 Green. 537.    *Confessions in like cases:* 76 S. C. 284; 79 S. C. 84; 86 S. C. 392;

56 S. C. 432; 89 S. C. 228.    *Injury resulting from negligence of master and third person:* 2 Lab. M. & S., sec. 813; 18 L. R. A. 215; 106 U. S. 700; 16 C. C. A. 457; 47 N. W. 665; 58 S. W. 622; 79 S. C. 512; 44 Am. St. R. 118; 110 Id. 700.    *Duty of railroad company in maintaining switches:* 25 S. C. 446; 69 S. C. 293; 81 S. C. 211.

The opinion in this case was filed on July 5, 1912, but held up on petition for rehearing until

December 16, 1912.    The opinion of the Court was delivered by

Mr. Justice Hydrick.    This action was brought to recover damages for the alleged wrongful death of Wm. J. Fonville.    The cause and circumstances of his death are set forth in the complaint as follows:

5. "That plaintiff's intestate was on the 24th day of September, 1908, and had been for some years, an engineer in the employment of the defendant, Southern Railway Company, and on said date was operating an engine drawing train No. 41, a regular passenger train, on defendant's main line from Charlotte, N. C., to Seneca, S. C.

6. "That on said main line, at a point about one mile south of Wellford, S. C., a spurtrack, known as Gross' Siding, leaves the main line and extends in a southeasterly direction to Gross' Oil Mill, and after passing said mill it again connects with the main line; that the movement of the spurtrack at the points of intersection with the main line are controlled by a switch at each connection with the main line. That the switch has connected with it a lantern so placed that it will in the nighttime show a white light when the switch is closed and the main line clear, and a red light when the switch is open and the main line not clear.    That some such arrangement is necessary in order to provide for the safety of the employees operating trains in the nighttime,

and it is necessary that the light be so placed that it may be seen by the persons in charge of the approaching train.

7. "That for some distance north of said point the track is curved, and runs through a deep cut and under an overhead bridge, causing the view of an engineer on a southbound train to be obstructed, so that the signal light placed as it was at Gross' Siding is concealed from view, except for a very short distance; that the said light could have been easily so placed or arranged as to be seen by those in charge of approaching southbound trains, and that the failure to so place or arrange it was negligence on the part of the defendant.

8. "That the train in charge of the plaintiff's intestate, at about forty minutes after eight o'clock on the evening of said date, approached said siding; that the switch connecting said spurtrack with the main line had been carelessly left unlocked and open, so that the train operated by plaintiff's intestate ran upon said spurtrack for about 250 feet, where the engine and two of the coaches were derailed, overturned and wrecked, and plaintiff's intestate was caught under said engine and so badly mangled, crushed and scalded that he died a few minutes thereafter.

9. "That the death of plaintiff's intestate was caused by the joint and concurrent negligence of the defendants, as follows: That the said switch was carelessly left unlocked or open, or was not provided with a safe and suitable lock, so as to secure it from outside interference, and that at the time of the approach of said train it had been, through the negligence of the defendants, thrown so as to connect the spurtrack; that the switch light was carelessly placed so that it could not be seen by the approaching southbound trains, and could not warn those operating said trains when the switch was thrown; the spur track was carelessly and negligently constructed and maintained, the rails were too light and improperly secured or fastened, the ties defective, the

roadway not properly ballasted, or graded, so as to enable trains to pass over it in safety."

The allegations of the fifth paragraph were admitted. All others were denied.

The plaintiff introduced testimony tending to prove all the material allegations of the complaint. Besides relying upon their denial of the material allegations of the complaint the defendants undertook to prove that Fonville's death was caused by the malicious act of a negro boy, named Clarence Agnew, who; according to their contention, broke the switch lock and threw the switch. The train was wrecked between 8 and 9 o'clock at night, at Gross' Siding, which is about half way between Duncan and Wellford. Defendants introduced testimony tending to prove that the switch lights were burning and that the switch was properly set about 6 o'clock that evening, and that about that time or a little later, Agnew was seen on the railroad going from Duncans towards Wellford, that he was seen knocking at the switch; that he was arrested the next morning at the scene of the wreck and carried to jail, charged with having maliciously caused the wreck; that, on the next day, that is, the second day after the disaster, he was taken to the scene by the sheriff, who, following Agnew's directions, found an iron bolt and a part of the switch lock some distance from the switch, and another part of the lock was pointed out to the sheriff by him at or near Wellford, where Agnew was seen about dark on the evening of the disaster. Defendants offered to prove that Agnew had confessed to the sheriff and others that he broke the lock and threw the switch, and they also offered to prove, by the record thereof, his conviction, in the Court of General Sessions for Spartanburg county, of murder in causing the wreck of the train and the death of Fonville and that he had been sentenced thereupon to imprisonment in the penitentiary for life. The Court excluded the record of his conviction and the evidence of his confession. We think the ruling was correct. The general rule, that the

records in criminal cases are not admissible in civil cases, as evidence of the facts upon which a conviction was had is well settled. There are some exceptions, but the general rule is as stated and it is founded upon sound principles, to wit, the want of mutuality, arising out of the fact that the parties to the record are not the same, and the fact that the course of the proceedings and the rules of decision in the two Courts are different. A higher degree of proof is required in criminal than in civil cases. 1 Gr. Ev., sec. 537; 7 Enc. Ev. 850; *Miller* v. *Sou. Pac. R. Co.,* 26 Pac. 70; *Chamberlain* v. *Pierson,* 87 Fed. 420. Appellant insists that the confessions of Agnew should have been admitted on the authority of *Coleman* v. *Frazier,* 4 Rich. L. 146. The action in that case was to recover of defendant, who was postmaster at Edgefield, a sum of money contained in a letter mailed by the plaintiffs and addressed to a firm in Charleston. The contents of the letter were stolen, while it was in the postoffice at Edgefield, by one Meigs, who was allowed access to the postoffice. The declarations of Meigs, who was dead, made in the presence of the defendant, that he had stolen the money, were admitted in evidence. Its admission was placed on two grounds: "1st, that the defendant was present, heard it, and received it as true; and, 2d, that it was the admission of an act, committed by the party making it, against his interest, and subjecting him to infamy and heavy penal consequences, and who was dead at the trial." It will be observed at once that two features distinguish that case from this: 1. In that case, Meigs was dead; in this Agnew is alive; 2, In that, it does not appear that Meigs had been convicted of larceny; in this, it does appear that Agnew had been convicted of murder, and was, therefore, disqualified as a witness. It is contended, however, that Agnew was civilly dead, because of his conviction of murder. But it must not be forgotten that his conviction disqualified him as a witness; and as he would not have been

allowed to testify, under oath, against objection, *a fortiori,* his declarations are inadmissible.

The next assignment of error that will be considered is in admitting evidence that the proper arrangement of the switch would have been to have placed what is known as a distant signal light at the north end of the curve from the switch toward Wellford, where it could have been seen by trains going south in time to stop before running into the switch, such signal light to be connected with the switch by means of rods and cables so as to be worked by the movement of the switch. Appellant contends that the negligence specified in the complaint was that the light was so placed at the switch that it could not be seen, and that there is no allegation of negligence in not also placing a distant signal light. We think a liberal construction of paragraphs 7 and 9 of the complaint warrants the admission of the testimony complained of.

The Court properly submitted to the jury the question whether the defendants' negligence or Agnew's malicious act was the proximate cause of Fonville's death. The question of proximate cause is ordinarily one for the jury. It may be decided by the Court only when the evidence is susceptible of only one rational inference.

The remaining exceptions relate to the charge and refusals to charge. We have carefully examined the charge in connection with the requests, and we are satisfied that the issues were fairly and correctly submitted to the jury.

Judgment affirmed.

MR. CHIEF JUSTICE GARY *concurs.*

MR. JUSTICE WOODS. I concur in the result and in the views expressed in the opinion, except as to the exclusion of evidence of the confession of the negro, Agnew, that he broke the lock and turned the switch. On the issue whether the wreck of the train was caused by the negligence of the

defendants' agents in the management of their trains, lights, and switches, or by the criminal act of a third party, there cannot be doubt that such confession of Agnew was against his interest, and his conviction of murder disqualified him and made him unavailable to the defendants as a witness just as if he had been dead. The admissions or confessions of one who dies after making them are held admissible because of their manifest probative value, and because it is impossible to obtain the direct evidence of such person. *Coleman* v. *Fraser,* 4 Rich. 146. The same reasoning applies as to the admissions and confessions of persons whose direct evidence has become unavailable by causes other than death, such as insanity or conviction of an offense which renders them incompetent as witnesses. Where the confession of a convict was made before conviction, the principle seems clearly applicable. The principle is well illustrated in *Griffith* v. *Sauls,* 77 Tex. 630, 14 S. W. 230, where the declarations of one Avery were received because he was rendered incompetent to testify by the loss of the power of speech and other infirmities of age.

The Supreme Court of Texas in holding the declarations competent said: "If Avery had been dead there could be no question as to the admissibility of his statements about which the witnesses testified, and this would be so because of the inability to produce the witness. If the party whose statements would be admissible if he was dead, from advanced age, or other irremediable cause, has lost the power of speech, and the ability to testify either orally or by deposition, what good would it do to produce him? In what would he be better than a dead man, in so far as the production of his testimony is concerned? We think the circumstances and condition of Avery, as shown by the record, furnish as satisfactory reason for admitting his statements as proof of his death would afford."

I agree, however, that the exclusion of this evidence is not sufficient ground for reversal, because the record shows that

the breaking of the lock and interference with the switch by Agnew was proved beyond doubt by other evidence, and was assumed as a fact by the Circuit Judge in his charge to the jury. The real issue was whether there was negligence of the defendants in not properly safeguarding their trains by placing their lights and switches, and on the trial of that issue I agree that there was no error.

MESSRS. JUSTICES WATTS *and* FRASER *did not participate in this hearing.*

4    Petition for rehearing refused by formal order filed on December 16, 1912.