16574

CARTWRIGHT v. HERALD PUB. CO. *ET AL.*
(68 S. E. (2d) 415)

*Messrs. John M. Spratt* and *Raymond B. Hildebrand,* of York, and *David W. Robinson,* of Columbia, *for Appellant,*

*Messrs. Roddey & Ward,* of Rock Hill, and *Wyche, Burgess & Wofford,* of Greenville, *for Respondents,*

December 12, 1951.

PER CURIAM.

This is an action for damages for libel which resulted in verdict and judgment for the defendants, and the plaintiff appealed. He was a member of the State House of Representatives from York County. He alleged that he was the target of two letters which were published on Sept. 2, 1949 and Sept. 6, 1949, in the daily Rock Hill Evening Herald, addressed "To the Readers" and signed, respectively, by Carl D. White and Harry B. Laws, Jr., both of York. The letters did not refer to appellant by name but as a church elder and there were other allusions from which, it was alleged in the complaint, appellant was intended and the publications were so understood by the readers. The complaint was upon two causes of action, one for each letter, and contained, by way of specifications in each cause, numerous allegedly libelous meanings, which, in view of the limited issues on appeal, it is not necessary to set forth.

The answer contained denials, particularly that the letters referred to the appellant, and alleged that they appeared in the column of the newspaper called the "Voice of the People" which was an open forum for public debate and was maintained in the interest of the public for all citizens to write letters of constructive comment and criticism upon matters of public interest, which were required to be signed by the authors and were published free, regardless of whether they were in agreement with the editorial policy of the paper, which is the only daily published in the county, and the letters complained of were so published in good faith and without malice. It was further alleged in the answer that the references to the appellant, if he was referred to, which was denied, were to his official acts as a member of the York legislative delegation, a public office, with respect to which it was the right and duty of the respondents to publish information relating to the acts of a public official which rendered the occasion privileged or qualifiedly privileged.

It appears from the pleadings and evidence that there was much public interest in the official actions of the delegation and there had been numerous letters thereon in the column of the newspaper which was called "Voice of the People". Of recent prior publication in the column was a letter dated Aug. 24, 1949, and signed by Ernest Black, Rock Hill, which was in defense of the delegation. It referred to previously published letters as ugly criticisms of the delegation and that they were keynoted by, quoting, "a lunatic sage who serves as ghost writer for most of the vitriolic letters contributed to this paper as well as fulfilling his life work as superintendent of a hen house, and warming the scorners bench." (Laws was in the poultry business.) This letter, which may be fairly said to have been provocative of the letters sued upon, contained the further uncomplimentary references to the critics of the delegation:

"I fail to find in any record anywhere that these individuals have ever contributed anything to the social or economic life of the county or their respective communities. I cannot find where they have cooperated in any progressive civic activity. I am unable to learn even of their attendance at any church. I did hear however that the weird writer who so loves to pen critical lines wrote to the Governor complaining that a certain Mr. Brandon's store was a nuisance to ladies and gentlemen on Sunday who attempted to shoulder their way through bootleggers practically blocking their way to church.

"I cannot believe that a single intelligent honorable citizen in this county will be misled by statements so out of character with their purported authors. Is the York County voter going to adopt a 'Little Red Riding Hood' attitude and ask, 'What makes your teeth so long, grandmother' or are the voters going to have the good sense to see that the teeth belong to the wolf? I believe in the intelligence and fair play of the mass of our people. I say we will not be misled by anti-social hypocrites."

Appellant admitted in evidence that the manuscript of the foregoing letter was brought to his office by the signer, Black, and a fellow member of the legislative delegation, and they consulted with appellant about the contents, after which the letter was typed in appellant's office and on his typewriter and thereafter delivered to the newspaper for publication. How much more appellant had to do with the letter and its composition and publication was in issue. It might have been reasonably inferred from the circumstances in evidence that he was at least equally responsible with Black for it. Black did not testify at the trial; neither did the other delegation member who accompanied Black to appellant's office on the occasion of the typing of the letter.

The case therefore falls within the well established rule of self-defense from libel or slander. "Statements made in an honest endeavor to vindicate one's character or to protect one's interests are usually regarded as qualifiedly privileged, even though they are false, if they are made in good faith and without malice. Thus, it seems to be definitely settled that when one person assails another in the public press, the latter is entitled to make reply therein, and so long as the reply does not exceed the occasion, he cannot be held responsible for any resultant injury. * * * On the other hand, however, it is clear that a defensive communication will lose its privileged character if the person making it goes beyond the scope of the original attack or indulges in language that is unnecessarily defamatory." 33 Am. Jur. 133, 134, Libel and Slander, sec. 134, *Duncan v. Record Pub. Co.,* 131 S. C. 485, 127 S. E. 606. Annotation, 103 A. L. R. 476, where the editor generalizes as follows: "It is clearly the general rule that statements made in reply to a defamatory publication enjoy a qualified privilege." See also, annotation, 132 A. L. R. 932, and *Thompson v. Boyd,* 1 Mill Const. 80.

In the interesting old case just cited the trial court excluded from evidence under the general issue a provocative former publication by the plaintiff, of and concerning the

defendant. The appellate court reversed judgment for plaintiff and said: "One libel cannot be pleaded, or set off as a justification in an action brought upon another; but whatever is material to the issue may be given in evidence. In actions for words, either parol or written, which are, in themselves, actionable, and in which it is not necessary to prove special damages, malice is a *sine qua non*; it is an essential ingredient. The general issue, therefore, puts the question of malice directly in issue; whatever, therefore, goes to prove the existence or want of malice, is clearly admissible. Upon the same principle, the occasion and manner of speaking, or publishing the words are always admitted as going to show the *quo animo*. The inquiry, then, is whether the handbill offered in evidence, went to show the *quo animo* with which the libel was published, or the occasion which called it forth. The libel, itself, contains sufficient evidence that the handbill was the occasion which induced its publication; and it is obvious, that at the time the defendant was writhing under the libellous matter contained in it, and that to repel it, was, at least, in some measure, the *quo animo*. How far it ought to have the effect of excusing the wrong done by the defendant, was a question for the consideration of the jury. They might, perhaps, have considered the handbill, itself, as a consequence of the preceding declarations of the defendant, stated in the libel; but whatever influence it might have had, it was clearly admissible. I will not, however, like Lord Kenyon, in *Anthony Pasquin's case,* throw the plaintiff's parchment at his head, and dismiss him from the court with infamy. But I am, clearly, of the opinion that the motion for a new trial ought to be granted."

Additional privilege arose from the fact that the appellant was the holder of public office, which occasioned the publication. "Although there are a few decisions to the contrary, the great weight of authority supports the view that publications dealing with political matters, public officers and candidates for office are entitled to a

measurable privilege by reason of the public interest involved therein." 33 Am. Jur. 161, sec. 169. Annotations, L. R. A., N. S., 1918E, 21, 110 A. L. R. 412 and 150 A. L. R. 358. (The instant appeal does not involve the distinction upon which the courts differ in respect to whether this privillege extends to false accusations made in excusable ignorance of the facts.) *Mayrant v. Richardson*, 1 Nott & McC. 347, 9 Am. Dec. 707, where demurrer to the complaint was sustained. *Jackson v. Record Pub. Co.*, 175 S. C. 211, 178 S. E. 833, in which directed verdict for defendant was upheld.

Two distinct privileges were thus applicable to the facts of this case, and the principles applicable to them were charged by the court. This court may disagree with the verdict of the jury and yet be without power to avoid or set it aside. As was said upon petition for rehearing in *Duncan v. Record Pub. Co.*, first appeal *supra*, 145 S. C. 196, 327, 143 S. E. 31, 74, "[s]o far as that verdict is concerned, this court is concerned only with the question if the trial judge, in the trial of the cause, committed any error of law. We are only judges of the law."

A necessary ingredient of a cause of action for libel is malice and the existence of it was a jury issue in this case which included privilege. *Switzer v. American Ry. Express Co.*, 119 S. C. 237, 112 S. E. 110, 26 A. L. R. 819. *Leevy v. North Carolina Mutual Life Ins. Co.*, 184 S. C. 111, 191 S. E. 811. On this feature the court instructed as follows, the correctness of which is not challenged by the appeal: "* * * In order to constitute an actionable libel the writing must make a false charge or insinuation against the plaintiff. It must be inspired by malice. * * * It is for the jury to say whether or not one who publishes libelous material written by another without actual knowledge that it refers to the plantiff is libelous as to him, does so with malice. * * *"

"I charge you that ordinarily the publication of defamatory words are actionable in themselves. There is a *prima*

*facie* implication of malice, and the plaintiff is not required to produce proof of malice beyond proof of the publication itself, but where the occasion is privileged, there is a *prima facie* presumption to rebut that inference of malice, and the burden is then on the plaintiff to show malice in fact, and I have heretofore defined to you what I mean by the term 'malice'. And so if the defendants have made out their defense of qualified privilege, then I tell you that that would be a good defense, and the burden would then be upon the plaintiff in order to defeat that defense to show and to rebut or to show that the defendant was guilty of malice in fact. The burden is upon the plaintiff, if you come to the conclusion that this was a qualified privilege on the part of the defendants, and that they exercised it. If you come to the conclusion that the defendant has satisfied you of that defense by the greater weight or the preponderance of the testimony, then you go back because the law says the burden is upon the plaintiff to prove malice in fact, and if the plaintiff proves malice in fact, that overcomes and excludes the defense of qualified privilege, and the plaintiff would then be entitled to a verdict at your hands if he makes out malice in fact irrespective of whether or not the defendants have made out their defense of qualified privilege."

There were more instructions of like tenor and effect, which were necessarily quite lengthy, and more of them need not be quoted. Significantly, appellant does not complain of any failure or refusal of the court to instruct the jury in accord with any request by him.

Turning now to appellant's grounds for reversal, the first is that the trial judge erred in refusing to grant a new trial upon the evidence, for which are cited· *Byrnes v. Alexander,* 1 Brev. 213, *Worrell v. South Carolina Power Co.,* 186 S. C. 306, 195 S. E. 638, and *Ford v. A. A. A. Highway Express, Inc.,* 204 S. C. 433, 29 S. E. (2d) 760, 764. None was an action for libel and none therefore approaches this case in facts. The old first cited (Byrnes) case was decided before institution of the present

practice which will be presently adverted to. In both of the modern cases the verdicts were affirmed and new trial refused, so they are rather authority against appellant. In Worrell's case the trial judge was referred to as the thirteenth juror and it was expressly said that this court has no jurisdiction to review matters of fact in an action at law, except to determine if a verdict is wholly unsupported by evidence. The following is from the opinion in the *Ford case:* "The principle is well settled in this jurisdiction that the question of granting a new trial on the grounds that the verdict is not supported by the evidence, or is excessive, arbitrary, and capricious, is left to the sound discretion of the trial Judge, who hears the evidence and sees the witnesses, and who is in a much better position than this Court to judge of the righteousness of verdicts. The decision of the trial Judge in such cases will not be disturbed unless his discretion is clearly abused."

This phase of the appeal may properly be held to be untenable because ground for it was not laid in the lower court as required by the present practice, which is alluded to above. The denials contained in the answer put in issue the libelous nature of the publications, whether they applied to appellant and also the question of privilege; and appellant's present contentions that they constituted libels of appellant as a matter of law and that the claimed privilege was abused should have been timely made by motion upon conclusion of the evidence, in order to be available on appeal. There was no motion for directed verdict on any of the issues. Rule 76 of the Circuit Court is as follows: "The point that there is no evidence to support an alleged cause of action shall be first made either by a motion for non-suit or a motion to direct the verdict; and the point that there is no evidence to support a defense shall be first made by motion to direct a verdict." There are numerous pertinent decisions cited in the footnote in Vol. I, Code of 1942, pp. 1427, 1428.

Suppose, however, that appellant had complied with the rule and the trial court had directed or instructed the jury that they should find that the publications were libels and referred to plaintiff. That would not have required verdict for plaintiff. The issues arising out of the double defense of the two separate grounds of privilege remained, as did the issue of the quantum of damages. There comes to mind the verse which was quoted by the erudite trial judge in his order on motion refusing new trial in the leading case of *Duncan v. Record Pub. Co., supra,* 145 S. C. 196, 225, 143 S. E. 31, 41, as follows: "Sir Philip well knows that his innuendoes Can serve him no longer in verse or in prose, For twelve honest men have sat on the cause Who are judges alike of the facts and the laws."

The second ground of appeal relates to alleged errors in the instructions to the jury with respect to the privileges of public controversy and public office. Specifically the instructions contained the following, to which appellant now objects: "If a party's good name is assailed by letters published in a newspaper, he may reply defending himself, and if his reply is made in good faith without malice, and it is not unnecessarily defamatory of his assailant, it is privileged even though false  *  *  *  and is not actionable.  *  *  *  An action for libel is not to be encouraged for publications made while parties are mutually engaged in making publications about each other. Publications made in the course of such an exchange if bearing some reasonable relation to the subject-matter of the controversy are qualifiedly privileged. * * * When a citizen holds a public office or holds himself as a candidate for public office, he becomes an object of legitimate criticism, his policies, acts, and fitness, and qualifications for the office he holds, and any newspaper or any citizen is privileged to publicly criticize him and discuss him thereabout without being held liable for damages."

The instructions were sound in their setting as applied to the facts of this case. Sustaining authorities are cited here-

inabove. Instructions have to be tested by a consideration of their context. Other portions of the charge were to the effect that the privileges of reply or self defense and criticism of a public official must be reasonably used in good faith and not abused. These principles were peculiarly within the province of the jury to apply to the facts, which they did by their verdict.

Correlative to the instructions complained of, quoted above, are the following excerpts from the charge:

"I charge you also that where defamatory words are falsely written of a person in regard to his public and official position and duties, prejudice to him and malice upon the part of the parties publishing such are implied in law. It is immaterial that the writer of a libel did so without intention to injure another person if in fact his act has injured some other person. The publisher is liable.

"I charge you also that fair and honest criticism in matters of public concern is privileged, but the privilege is limited strictly to comments and criticisms and does not extend to protect false statements, unjust inferences, imputation of evil motives, or criminal conduct, and attacks upon private character or reputation; the publisher being responsible for the truth of what he alleges to be the facts. It is for you as a jury to determine whether or not the criticisms or statements affecting a public officer or a public matter ceased to be fair and honest or become libelous.  *  *  *

"I charge you also that a newspaper is privileged to publish news and comments concerning a man's political life, but such privilege does not give it the right to publish statements made by it or made by a third person which impute to another the commission of acts which brings him into contempt or ridicule of the public or cause him to incur its hatred or which will injure him in his business or calling which are false and malicious.

"I charge you also that a newspaper or any party may make fair criticism of the public work of one who is a public

officer, but when the comment or criticism of a man's work becomes a false and malicious attack on his private or business character then I tell you that the language is libel- ·ous."

Considering the instructions as a whole, as they must be, we find no prejudicial error.

The final ground of appeal attacks the admission in evidence, on cross-examination of appellant, of the fact that soon after their election as members of the York County legislative delegation, and before the legislature convened, appellant and the other members attempted to take official action whereby they would be paid from county funds sums equal to $100.00 per month each as expenses, aggregating $6,000.00 per annum, in addition to the formerly legally provided compensation; and that in a court action further payments thereunder were enjoined after appellant had collected about $300.00 without filing statement of expenses, which he had not refunded. The gist of the argument is that because respondents did not plead the truth of the alleged libel, as justification or mitigation, this evidence was irrelevant to the issues and prejudicial to appellant. It is patent that the argument overlooks the issues which arose out of the defense of qualified privilege on account of appellant's public legislative office, to which the evidence was manifestly relevant and elucidative.

The order whereby new trial was refused discusses several grounds upon which this evidence was found to be admissible, which we think unnecessary to review in detail. It was all a matter of public record in the very courthouse in which the case was being tried, and related to appellant's official acts. It is probable that the facts were already known to the members of the jury, all of whom were his constituents, and exclusion would have doubtless been ostrich-like. It appears to be entirely illogical to say that a public official, here a lawmaker, who becomes a plaintiff in an action for damages for alleged libel, should be entitled to

withhold from court and jury his relevant official acts which are otherwise public, and should be. It hardly becomes him to allege prejudice by reason of the admission in evidence of his own official conduct, and by his own testimony. No direct authority is cited to the point in appellant's brief, and we know of none. However, we think the unusual situation speaks for itself, and we find no error in the allowance of the cross-examination of which appellant complains.

Judgment affirmed.

BAKER, C. J., and FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.