## 17403

J. CLINT McCLAIN, Respondent, v. The ANDERSON FREE PRESS, a corporation, Appellant

(102 S. E. (2d) 750)

*Messrs. Watkins, Vandiver & Freeman,* of Anderson, *for Appellant,*

*Messrs. Charles Welborn* and *G. Ross Anderson, Jr.,* of Anderson, and *J. D. Todd, Jr.,* of Greenville, *for Respondent,*

*Messrs. Watkins, Vandiver & Freeman,* of Anderson, *for Appellant,*

March 25, 1958.

Moss, Justice.

This action was brought by J. Clint McClain, the respondent herein, and former Sheriff of Anderson County, South Carolina, for the recovery of damages on account of an alleged libelous publication of and concerning him, against The Anderson Free Press, the appellant herein. The publications forming the basis of this action by the respondent appeared in the issues of the newspaper of appellant on May 31, 1956 and June 11, 1956. The complaint alleges the pub-

lication by the appellant, in its weekly newspaper, of a letter written by Dr. T. W. Martin to the editor, in which the author states that his brother, the deceased Frank Martin, had admitted to him that he was paying money for protection and immunity from arrest and prosecution for illegally selling liquor. The *colloquium* and the *innuendo* assert that this was intended, and understood by the readers of the newspaper, to mean that the deceased brother of Dr. T. W. Martin was bribing the Sheriff, the respondent in this case. The appellant, by way of answer, plead the defense of truth and qualified privilege.

The undisputed testimony shows that the respondent had been Sheriff of Anderson County, South Carolina, for eight years and that at the time of the publication of the alleged libelous article, he was engaged in a campaign for re-election, in which he was defeated.

It further appears that Frank Martin, a middle aged man, had a widespread reputation for dealing in illegal liquor, although he had never been apprehended, or a case made against him, by either the local, state or federal authorities. Frank Martin committed suicide on May 16, 1956.

It appears that the appellant is the publisher of a weekly newspaper in Anderson and that on May 31, 1956, twelve days before the primary election for the office of Sheriff, and other county officials in Anderson County, there was published in said newspaper a statement of Dr. T. W. Martin, a practicing physician at Belton, South Carolina. It further appears that on June 11, 1956, one day before the primary election, the appellant republished a portion of the foregoing article of Dr. Martin under a headline reading "Charges of Corruption Unanswered by McClain", and the following:

"Dr. Martin, well known physician who has practiced his profession in Belton since 1931 and is a Deacon in the Belton First Baptist Church stated 'My brother boldly and repeatedy boasted to me that he was paying protection and immunity.' "

We will assume that the articles published in the newspaper of the appellant were libelous per se. However, if the appellant established its affirmative defense of the truth of the statements contained in the publication, such would be a good defense.

The case was tried before the Honorable J. Henry Johnson, with a jury, and resulted in a verdict for the appellant.

Upon the trial of the case, the appellant, in order to establish its affirmative defense, produced a number of witnesses who testified that at various times prior to the death of Frank Martin, that he had told them he was paying money for protection and immunity. One of these witnesses testified specifically that Frank Martin told him, referring to the respondent, "I pay him $25.00 a week myself to let me alone." Some of the other witnesses testified that Frank Martin had, at different times, declared and admitted to them separately, that he was paying bribes for immunity from arrest for selling liquor.

The respondent objected to the admission of the testimony given by the several witnesses as to the statements made to them by Frank Martin, deceased. The basis of the objection was that the evidence was obnoxious to the hearsay rule and did not come within any of the exceptions to such rule. The trial Judge admitted the testimony as evidence.

The trial Judge instructed the jury that,

"A publication made in good faith concerning the activities of a public official is privileged, and there is a presumption that such publications are made in good faith, because such publications concerning public officials is required by the public good, if the charges made in such statements are true."

And again,

"There is a presumption that such publications were made in good faith pursuant to the newspapers duty to the public."

The trial of this case resulted in a verdict for the appellant. The respondent moved for a new trial upon three grounds.

The Court granted the motion for a new trial on two of such grounds. (1) That he had committed error in permitting the witnesses above referred to to testify to alleged conversations had by them with Frank Martin, now deceased, on the ground that such testimony was hearsay and inadmissible. (2) That he was in error in charging the jury, at the request of the appellant, as is hereinabove quoted. The appellant, is before this Court challenging the correctness of the Order of the trial Judge in granting a new trial.

The first question for determination on this appeal is stated by the appellant to be the following: "Did the Court err in holding that in South Carolina, in a civil case, testimony is not admissible, as an exception to the hearsay rule, of declarations or admissions made by a person, since dead, contrary to his penal interest and which might subject him to infamy and penal consequences."

Hearsay evidence has been defined as that which derives its value, not solely from the credit to be given to the witness upon the stand, but in part from the veracity and competency of some other person. The real basis for the exclusion of such evidence lies in the fact that hearsay testimony is not subject to the test which can ordinarily be applied for the ascertainment of the truth of the testimony. Hearsay testimony is made without the sanction of an oath and without the declarant being under a responsibility to answer for the crime of perjury in making a willful falsification. 20 Am. Jur., Evidence, paras. 451-452, at pages 400-401.

In the case of *Cooper Corporation v. Jeffcoat,* 217 S. C. 489, 61 S. E. (2d) 53, 55, Mr. Justice Taylor quotes with approval from 20 Am. Jur., Evidence, para. 452, at page 400, and states the reason why hearsay testimony is objectionable. From his Opinion we quote the following:

"Hearsay evidence is inadmissible according to the general rule. Various reasons have been assigned for requiring the exclusion of this kind of testimony. The real basis for the exclusion, however, appears to lie in the fact that hearsay

testimony is not subject to the tests which can ordinarily be applied for the ascertainment of the truth of testimony. It is said that a statement by hearsay is one made without the sanction of an oath and without the declarant being under a responsibility to answer for the crime of perjury in making a wilful falsification. This objection loses some of its force when it is remembered that even a statement made under oath or in the course of a judicial proceeding between parties other than the parties to the suit is inadmissible as hearsay unless within an exception to the rule. Probably the most important objection to admitting hearsay testimony in evidence is that the declarant is not present and available for cross-examination. The exercise of the right to cross-examine the witness of the adverse party is regarded as, and is in fact, essential in the administration of justice to discover the falsity of testimony and prevent the admission of perjured testimony. This right is not available in respect of hearsay since the declarant is not present in court. Moreover, both the court and the jury are without opportunity to test the credibility of hearsay statements by observing the demeanor of the person who made them."

There can be no doubt but that the testimony of the several witnesses as to what Frank Martin, deceased, had told them, was hearsay. Appellant contends, however, that the testimony falls within an exception to the hearsay rule as being a declaration against penal interest and hence admissible in evidence.

In Jones on Evidence, 4th Ed., Vol. I, para. 323 at page 600, it is said:

"Having considered elsewhere the admissibility in evidence of admissions and declarations against interest by parties and those in privity with parties, we turn now to a related class of declarations against interest—that is, those made by a person who is neither a party to the suit nor in privity with a party and who has since died.

"As one of the exceptions to the general rule excluding hearsay, it has long been settled that the declarations of

persons since deceased are admissible in evidence—provided that the declarant had peculiar means of knowing the matter stated, that he had no interest to misrepresent it, and that it was opposed to his pecuniary or proprietary interest. * * *"

And again from Jones on Evidence, 4th Ed., Vol. I, para. 324, at page 602, it is said:

"It is well settled that the declaration must be against the pecuniary or proprietary interest of the declarant. This was illustrated in a celebrated case where, for the purpose of proving a marriage, the statements of a clergyman, since deceased, who had performed the ceremony at Rome were offered in evidence on the theory that they were against his interest, since they were admissions that he had violated a statute and exposed himself to a prosecution for penalties. The statements were rejected on the ground that the interest of the declarant was not a pecuniary interest within the meaning of the rule. Said Lord Brougham: 'To say, if a man should confess a felony for which he would be liable to prosecution, that therefore the instant the grave closes over him all that was said by him is to be taken as evidence in every action and prosecution against another person is one of the most monstrous and untenable propositions that can be advanced.' It is apposite to note that the courts exclude deceased persons' confessions which tend to exculpate another person who is charged with the offense—although there is authority for admitting in evidence confessions and declarations which are shown to have been against the penal interest of the declarant. * * *"

In McCormick on Evidence, paragraph 255, at page 549, the author, in discussing the admissibility of declarations against penal interest, says:

"In 1844 in the *Sussex Peerage Case* the House of Lords, ignoring precedents, determined that a declaration confessing a crime committed by declarant is not receivable as a declaration against interest. This decision, perhaps more than any other, has been influential in confining the de-

velopment of this exception to the hearsay rule within narrow materialistic limits. It has been generally followed in this country in criminal cases. In civil cases, the courts, while not repudiating the limitation, have sometimes been able to justify the admission of the third person's confession of crime upon the somewhat artificial theory that the particular crime was also a tort and thus the fact declared was against material interest in subjecting the declarant to liability for damages."

In 20 Am. Jur., Evidence, para. 556, at page 468, it is said:

"* * * Furthermore, in order that such a declaration may be admitted in evidence, the statement must have been against the pecuniary or proprietary interest of the declarant. The fact that the declaration would probably subject the declarant to a criminal liability is not sufficient to render it admissible as against interest. * * *"

The last quoted text is supported by the case of *Donnelly v. United States,* 228 U. S. 243, 33 S. Ct. 449, 459, 57 L. Ed. 820, Ann. Cas. 1913E, 710. The trial Judge likewise relied upon this case in granting the new trial. In the *Donnelly case* it appears that the defendant was convicted of murdering a Chickasaw Indian. Upon the trial of this case the Court refused to admit in evidence testimony offered by the defendant tending to show that one Joe Dick, an Indian, since deceased, had confessed that it was he who had shot Chickasaw. The Court, in affirming the exclusion of the testimony so offered, said:

"Hearsay evidence, with a few well-recognized exceptions, is excluded by courts that adhere to the principles of the common law. The chief grounds of its exclusion are, that the reported declaration (if in fact made) is made without the sanction of an oath, with no responsibility on the part of the declarant for error or falsification, without opportunity for the court, jury, or parties to observe the demeanor and temperament of the witness, and to search his motives and test his accuracy and veracity by cross-examination,

these being most important safeguards of the truth where a witness testifies in person, and as of his own knowledge; and, moreover, he who swears in court to the extrajudicial declaration does so (especially where the alleged declarant is dead) free from the embarrassment of present contradiction, and with little or no danger of successful prosecution for perjury. It is commonly recognized that this double relaxation of the ordinary safeguards must very greatly multiply the probabilities of error, and that hearsay evidence is an unsafe reliance in a court of justice.

"One of the exceptions to the rule excluding it is that which permits the reception, under certain circumstances and for limited purposes, of declarations of third parties, made contrary to their own interest; but it is almost universally held that this must be an interest of a pecuniary character; and the fact that the declaration alleged to have been thus extrajudically made would probably subject the declarant to a criminal liability is held not to be sufficient to constitute it an exception to the rule against hearsay evidence. So it was held in two notable cases in the House of Lords— *Berkeley Peerage Case* (1811) 4 Campb. 401; *Sussex Peerage Case* (1844) 11 Clark & F. 85, 103, 109, 8 Jur. 793, recognized as of controlling authority in the courts of England.

"In this country there is a great and practically unanmious weight of authority in the state courts against admitting evidence of confessions of third parties, made out of court, and tending to exonerate the accused. * * *."

The above rule has been criticised by many of the text writers, particularly by Professor John Henry Wigmore in his Treatise on Evidence, 3rd Ed., Vol. 5, para. 1476. However, he does admit that the rule as expressed in the *Donnelly case* is the majority rule in the United States. He says: "The same attitude has been taken by most American Courts, excluding confessions of a crime, or other statements of facts against penal interest, made by third persons." The rule

was also criticised in a Dissenting Opinion authored by Mr. Justice Holmes. See also *Hines v. Commonwealth of Virginia,* 136 Va. 728, 117 S. E. 843, 35 A. L. R. 431.

The general rule is summarized in 35 A. L. R. at page 441, in the following language:

"The overwhelming weight of authority supports the rule that on the trial of a criminal case, evidence of the admission or confession of a stranger that he perpetrated the offense is not admissible as substantive evidence tending to exculpate the accused."

Reference is here had to this annotation showing a collection of cases from all over the country supporting the rule. As to the applicability of the rule in a civil case, attention is directed to the annotation in 162 A. L. R., beginning at page 463.

The appellant admits that the majority rule is as it is heretofore set forth, but asserts that in South Carolina, our own Court has declared in the case of *Coleman & Lipscomb v. Frazier,* 4 Rich. 146, 38 S. C. 146, 53 Am. Dec. 727, that declarations or admissions against one's penal interest, in that they might subject the declarant to punishment and infamy, are admissible as an exception to the hearsay rule, where the declarant is dead at the time of the trial.

A review of the *Coleman & Lipscomb v. Frazier case, supra,* shows that it was a civil action to recover from the defendant, the Postmaster at Edgefield, a sum of money contained in a letter mailed by the plaintiffs to a firm in Charleston. This letter, in its transit, had to pass through the Post Office at Edgefield, and in the usual course of the mail, would have remained in that office from Wednesday until Friday. While the letter was in the Post Office at Edgefield, it was stolen by one Meigs, and the contents applied to his own use. The plaintiff charged the defendant with negligence and carlessness, and that the loss occurred because the defendant did not properly superintend his clerks and agents.

It appears that Meigs, a store keeper, whose place of business was adjacent to the Post Office, had access to the mails. The defendant made an investigation of the loss of the letter. Meigs confessed in the presence of the defendant to the stealing of the letter and abstracting the money therefrom. At the time of the confession Meigs was dying from consumption. At the time of the trial of the case he was dead. The plaintiffs offered the confession of Meigs in evidence and it was allowed over the objection of the defendant. The trial Judge admitted the evidence on the ground that the defendant was present at the time of the confession, heard it, and he received and acted on it as being true, and that it was the admission of an act committed by the party making it, against his interest, subjecting him to infamy and heavy penal consequences.

The question for determination upon appeal in the *Frazier case* was whether the admission made by Meigs was competent evidence. Justice O''Neall who wrote the Opinion for the Appellate Court, was also the trial Judge in the lower Court. He says, in ruling that the admission of Meigs was relevant testimony, that "In either or both of these points of view, I think the evidence was admissible, but more especially when both are combined." He also says "When, therefore, Meigs made the confession, and he received and acted on it as true, which he did, he cannot afterwards be allowed to say it is no evidence against me. It is, as to him, *prima facie* evidence of the fact. He could relieve himself of its effect by showing that, in fact, Meigs was not the guilty man, or that he received it as true, by mistake."

It should be pointed out that Frazier, in the course of his investigation of the loss examined Meigs, and upon such examination Meigs confessed in the presence of the defendant to stealing the letter and pilfering the money therefrom. There can be no doubt that Frazier accepted the admission of Meigs and acted upon it as being absolutely true. The Court says, in the *Frazier case,* that it would not permit the defendant to receive an admission and act on it as being

true, then afterwards say that it is no evidence against him. In the present case there is no suggestion that the respondent had any part in obtaining from Frank Martin, the deceased, any admission that he was paying for protection or bribing the respondent. If the respondent had had any part in obtaining such statement from the deceased, of course, he would not be in position to object to the admissibility of such evidence.

Again when the Court says that the admission of Meigs was relevant testimony because it subjected him to heavy penal consequences, there is added as a basis for the admission of such testimony, the following: "To this let it be added that the defendant was present and received it as true, * * *". Certainly the respondent was not present when the statement of Frank Martin was made. He did not receive it as being true and hence he is in position to say that it cannot be used as evidence against him.

In the case of *Legrande v. Legrande,* 178 S. C. 230, 182 S. E. 432, 434, 102 A. L. R. 582, which was a widow's action against the beneficiary of her husband's group policy to recover half of the proceeds under an alleged agreement, whereby the beneficiary promised to pay half to the widow. It appears in the record of this case that the insured, Edward Horace Legrande, summoned his wife and his mother to his bedside and informed them of the existence of his life insurance policy; that he stated that he wanted his wife to receive one half of the benefits of said policy; that the mother agreed with her son that she would hold said policy for the benefit of herself and the widow, and, upon the death of her son collect the proceeds and distribute same equally. The mother objected to the testimony as to the statements made by her son on the ground that it was hearsay. This Court, in disposing of the exception posing this question, said:

"The second objection to this testimony, to the effect that it was hearsay, is not well taken for the reason that the record shows that appellant was present and took part in the conversation."

In 20 Am. Jur., Evidence, para. 555, at page 467, it is said:

"An objection that a statement is hearsay is not available as to a statement made in the presence of the party against whom the statement is offered in evidence and in a conversation in which he took part."

It is thus made crystal clear that the admission of Meigs in the *Frazier case* was relevant evidence because the record shows that Fraizer was present, took part in the conversation, and he was not in position to object that the statement as made by Meigs was hearsay.

There is another reason why the admission of Meigs was relevant testimony. As is heretofore stated the record shows that Frazier accepted the statement of Meigs as being true. In McCormick on Evidence, para. 246, at page 525, the following rule was announced:

"One may expressly adopt another's statement as his own. That is an explicit admission like any other and is to be classed as an express admission. In this text the term adoptive admission is applied to evidence of affirmative acts of a party which manifest circumstantially the party's assent to the truth of a statement made by another person."

In the *Frazier case,* the admission of Meigs did not exculpate or inculpate Frazier. The declaration of Frank Martin, deceased, admitted that he was guilty of bribing a public official. The declaration alleged to have been made by Frank Martin not only incriminated himself but was a statement incriminating and inculpating the respondent. There is far more reason to reject a statement which is incriminating and inculpating than to reject a declaration that is exonerating and exculpatory.

We do not think that the holding in the case of *Coleman & Lipscomb v. Frazier, supra,* has committed us to the rule that declarations against one's penal interest, where the declarant is dead, are admissible as an exception to the hear-

say rule, where the party making such declaration is neither a party to the suit nor in privity with a party thereto.

We do not think that the trial Judge committed error in granting the respondent's motion for a new trial on the ground that he had committed error in permitting the several witnesses to testify as to alleged conversations had by them with Frank Martin, deceased. The testimony was hearsay and inadmissible.

The other question raised by the second exception is whether the trial Judge committed error in the portion of his charge heretofore quoted.

We have held in numerous cases that any printed or written statement which falsely and maliciously charges another with the commission of a crime is libelous *per se*. *Smith v. Bradstreet Co.*, 63 S. C. 525, 41 S. E. 763; *Duncan v. Record Publishing Co.*, 145 S. C. 196, 143 S. E. 31; *Rogers v. Florence Printing Co., Inc.*, 230 S. C. 304, 95 S. E. (2d) 616. We have also held that the publication of an article libelous *per se* carries with it a presumption of malice. *Bell v. Bank of Abbeville*, 208 S. C. 490, 38 S. E. (2d) 641.

We are dealing here with a publication which, if untrue, is libelous *per se*. The respondent was charged with accepting a bribe. This is a crime and the publication of such an article was libelous *per se* and carried with it the presumption of malice.

The appellant asserted by way of defense that it had published the articles referred to in the complaint in its weekly newspaper and that such was qualifiedly privileged. In the case of *Fitchette v. Sumter Hardwood Co.*, 145 S. C. 53, 142 S. E. 828, 833, a qualified privilege is defined as follows:

" 'A communication made in good faith on any subject-matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege,

would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation.'

"In Newell on Slander and Libel (4th Ed.), at page 380 it is said:

" 'Qualified privilege * * * extends to all communications made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty; and the privilege embraces cases where the duty is not a legal one, but where it is of a moral or social character of imperfect obligation.' "

See also in this connection the cases of *Kirby v. Gulf Refining Co.,* 173 S. C. 224, 175 S. E. 535; *Switzer v. American Ry. Express Co.,* 119 S. C. 237, 112 S. E. 110, 26 A. L. R. 819.

It should be kept in mind that a newspaper is privileged to publish matters about public officials or those offering themselves for public office, provided such publications do not contain charges which impute the commission of a crime. Such right is not authority, however, for false and malicious statements libelous in nature. *Jackson v. Record Publishing Co.,* 175 S. C. 211, 178 S. E. 833.

Where the answer pleads the affirmative defense of qualified privilege the burden of proof is upon the defendant to establish such a defense by a preponderance of the evidence.

In the case of *Herring v. Lawrence Warehouse Co.,* 222 S. C. 226, 72 S. E. (2d) 453, 456, which was a libel and slander action, this Court said:

"It is conceded by respondent that a plaintiff had the right to rely on the falsity of the alleged slanderous words, but such right exists only until evidence is presented to rebut such presumption, and such presumption is rebutted by evidence of qualified privilege. However, even where the defenses of qualified privilege and justification are pleaded, the burden of establishing such defenses rests upon the respondent."

In the case of *Cartwright v. Herald Pub. Co.*, 220 S. C. 492, 68 S. E. (2d) 415, 418, the writer of this Opinion was the trial Judge, and I charged the jury, which was later approved by this Court as follows:

" 'There is a *prima facie* implication of malice, and the plaintiff is not required to produce proof of malice beyond proof of the publication itself, but where the occasion is privileged, there is a *prima facie* presumption to rebut that inference of malice, and the burden is then on the plaintiff to show malice in fact, and I have heretofore defined to you what I mean by the term "malice." And so if the defendants have made out their defense of qualified privilege, then I tell you that that would be a good defense, and the burden would then be upon the plaintiff in order to defeat that defense to show and to rebut or to show that the defendant was guilty of malice in fact. The burden is upon the plaintiff, if you come to the conclusion that this was a qualified privilege on the part of the defendants, and that they exercised it. If you come to the conclusion that the defendant has satisfied you of that defense by the greater weight or the preponderance of the testimony, then you go back because the law then says the burden is upon the plaintiff to prove malice in fact, and if the plaintiff proves malice in fact, that overcomes and excludes the defense of qualified privilege, and the plaintiff would then be entitled to a verdict at your hands if he makes out malice in fact irrespective of whether or not the defendants have made out their defense of qualified privilege.' "

We know of no authority where an article is published containing matter that is libelous *per se,* and where a defense of qualified privilege is asserted, that there is a presumption that such publication is made in good faith because such concerns a public official and is required by the public good. We have not been able to find any case that holds that there is a presumption that such publication was made in good faith pursuant to the newspaper's duty to the public. The most that a newspaper can claim is that upon establishing its defense of qualified privilege, the presumption of

malice is thereby rebutted and the burden is then upon the plaintiff to prove malice in fact.

We think the trial Judge was correct when he concluded that he had committed error in his charge.

The exceptions of the appellant are overruled and the judgment of the lower Court is affirmed.

TAYLOR, J., concurs.

STUKES, C. J., and OXNER, J., concur in result.

LEGGE, J., dissents.

OXNER, Justice (concurring in result).

I agree with Mr. Justice Legge that the exception extends to statements against the penal interest of the declarant. Our decisions so hold and I think properly so. But I do not think that the facts bring the instant case within the exception.

Where the declarant seeks not only to implicate himself but a third party, I am doubtful whether such declaration may be used as substantive evidence against such third party. Closely analogous is the doctrine of admissions and confessions which permits such statement to be considered only against the person making it. In *Allen v. Dillard,* 15 Wash. (2d) 35, 129 P. (2d) 813, 823, the Court said: "A statement which under some circumstances may be against the interest of the declarant may not be used to prove matters as to which the statement is not against his interest." Here the declaration is not being offered for the purpose of showing that Martin committed the crime of bribery, a fact against his interest, but to show that McClain committed bribery. Assuming, however, that a declaration of this kind may under proper circumstances be used against a third party, it should be closely scrutinized so as to avoid an unjust result.

It is essential that we keep in mind the ground for this exception to the hearsay rule. It is based upon the principle of experience that a statement asserting a fact distinctly

against one's interests is entirely unlikely to be deliberately false or heedlessly incorrect, and is thus sufficiently guaranteed, though oath and cross-examination are wanting. It is upon the assumption that no man will speak falsely to his own hurt and will not make a declaration against his interest unless truth compels it. Therefore, to be admissible, there should be a circumstantial guarantee of the trustworthiness of the declaration.

The declarations offered in evidence were statements alleged to have been made by Frank Martin to relatives and friends. It is not reasonable to suppose that he thereby intended to expose himself to prosecution, or that he made these statements under any belief that he should do so. Instead of being in the nature of a confession, they were merely loose statements heedlessly made by a braggadocio. They were so characterized by a number of these witnesses. One of them testified that "Frank Martin loved to brag a little", and another said that knowing Frank Martin as he did, he didn't "pay any attention to the conversation." It also may be reasonably inferred that the remarks to some of the witnesses were made to deter them from reporting Martin to the Sheriff for bootlegging.

Of course, the truth of the declaration itself, as well as the credibility of the witness who undertakes to repeat it, must ordinarily be left to the jury. However, it is the duty of the Court in the first instance to determine whether the circumstances are such as to reasonably warrant an inference that the declarations are of a trustworthy nature. In the instant case, I do not think they are.

For the foregoing reasons, I concur in the result of the opinion of Mr. Justice Moss.

STUKES, C. J. (concurring and dissenting).

I concur in the opinion of Mr. Justice Oxner, and in the result of the leading opinion, that of Mr. Justice Moss. However, I dissent from the disposition by the latter of the second point of the appeal relating to the instructions to

the jury and agree with Mr. Justice Legge; I do not think there was prejudicial error in the charge when it is considered as a whole, as it must be.

LEGGS, Justice (dissenting).

In *Coleman & Lipscomb v. Frazier,* 4 Rich. 146, 38 S. C. 146, 53 Am. Dec. 727, evidence of Meigs' declaration was, as Justice Moss points out, admitted on two grounds, to wit: (1) that the declaration was against the penal interest of the declarant, who at the time of the trial was dead; and (2) that it had been made in the defendant's presence. But, the court having based its decision on both grounds, we cannot evade the consequences of the ruling on the first by saying that the decision might have been rested on the second alone. Where a decision is based on two or more grounds, the ruling upon each is the judgment of the court; neither ruling is *obiter;* nor is the ruling on one ground less authoritative than that on another. 14 Am. Jur., Courts, Section 83, at p. 298; 21 C. J. S., Courts § 190 b, at pages 315, 316; *United States v. Title Insurance & Trust Co.,* 265 U. S. 472, 44 S. Ct. 621, 68 L. Ed. 1110; *Broderick v. City of New York,* 295 N. Y. 363, 67 N. E. (2d) 737; *Dooly v. Gates,* 194 Ga. 787, 22 S. E. (2d) 730; *Hayes v. City of Wilmington,* 243 N. C. 525, 91 S. E. (2d) 673; *Woodard v. Pacific Fruit & Produce Co.,* 165 Or. 250, 106 P. (2d) 1043, 131 A. L. R. 832; *In re* Finch's Estate, 239 Iowa 1069, 32 N. W. (2d) 819, 3 A. L. R. (2d) 1403; *Gaskill v. Richmaid Ice Cream Co.,* 111 Cal. App. (2d) 745, 245 P. (2d) 53. We should either follow or overrule *Coleman & Lipscomb v. Frazier* on the question of admissibility of a declaration against penal interest.

Although the decisions in a majority of the states limit the admission of declarations by persons since deceased to such as are against the declarant's pecuniary or proprietary interest, I am persuaded that the ruling in *Coleman & Lipscomb v. Frazier, supra,* is sound and should be adhered to. It is difficult to perceive sound reason for excluding a declaration against penal interest while admitting one

against pecuniary interest. The exclusionary rule has been thoroughly criticized by Professor Wigmore (Evidence, Third Ed., Vol. V, Sections 1476 *et seq.*) and Professor McCormick (Handbook of the Law of Evidence, 1954, Sections 255 *et seq.*). See also the dissenting opinion of Mr. Justice Holmes in *Donnelly v. United States,* 228 U. S. 243, 33 S. Ct. 449, 57 L. Ed. 820. As was said in *Sutter v. Easterly,* 354 Mo. 282, 189 S. W. (2d) 284, 289, 162 A. L. R. 437, concerning a declaration by one confessing to perjury in the procurement of a judgment for another: "This statement subjected him not only to the possibility of indictment and imprisonment, but to the prospect of being held up to public shame in his community. It is completely unrealistic to say that a statement of such character is not 'against one's interest' and 'unlikely to be either deliberately false or heedlessly incorrect' ".

In his Handbook on South Carolina Evidence (S. C. Law Quarterly, Vol. 9, No. 4A, pp. 130-133), Judge Whaley enumerates the essentials, under our decisions, to admissibility of a declaration against interest. They are, in brief:

1. That the declarant is dead. Judge Whaley calls attention to the concurring opinion of Mr. Justice Woods in *Fonville v. Atlanta & C. A. L. R. Co.,* 93 S. C. 287, 75 S. E. 172, as tending to liberalize this requirement by holding the declaration admissible though the declarant is living, if he is in fact unavailable as a witness.

2. That the declarant would have been competent as a witness.

3. That the declaration is against the interest, either pecuniary or incriminatory, of the declarant.

4. That it was made before the controversy arose.

5. That it was made without any interest on the part of the declarant to falsify the fact.

6. That the fact declared was within the knowledge of the declarant.

All of the foregoing elements are present here. That the declaration of Frank Martin tended to inculpate respondent as well as himself does not render it incompetent. The test of its competency is whether or not the declarant, if living, would have been competent to testify to the fact stated in the declaration. That Frank Martin would have been competent to so testify seems obvious. The instant case is not within the principle that forbids the use of a confession by one of two co-defendants or co-conspirators as evidence against the other. The situation is rather like that in *Coleman & Lipscomb v. Frazier, supra.* There the self-incriminatory declaration of Meigs was admitted against the defendant Frazier, the postmaster, in proof of the latter's negligence in office. Here the declaration of Frank Martin was competent and relevant on the issues raised by the pleas of qualified privilege and justification. It seems to me, too, that Frank Martin's declaration was made to relatives and friends is a matter that goes to the credibility or the weight of the evidence, and not to its admissibility.

As to the second ground upon which the learned trial judge granted respondent's motion for a new trial, he said:

"Pursuant to defendant's request, I charged the jury: 'a publication made in good faith concerning activities of public officials is privileged and further, there is a presumption that such publications are made in good faith because such a publication concerning public officials is required by the public good if the charges made in such statements are true'. And further, that 'there is a presumption that such charges were made in good faith, pursuant to the newspaper's duty to the public'. The plaintiff made timely objection to this charge.

"Upon mature consideration, I am of the opinion that the charge went too far. The publications complained of were, if untrue, libelous *per se,* and publication of an article libelous *per se* carries with it malice. *Bell v. Bank of Abbeville,* 208 S. C. 490, 38 S. E. (2d) 641."

When considered in connection with the rest of the charge on qualified privilege, the two sentences quoted above do not appear erroneous or misleading. They merely rephrased part of the well-settled rule that had been previously charged, to-wit: that where the defendant has established by the preponderance of the evidence that the occasion was privileged and that the privilege was not abused, the presumption of malice arising from the publication of a statement libelous *per se* is thereby rebutted.

I would reverse the judgment of the trial court.